# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF
## PENNSYLVANIA

| | | |
|---|---|---|
| DANIEL HUBERT, individually and on behalf of all others similarly situated, | : | Civil Action No. 2:15-cv-01391-MRH |
| | : | |
| Plaintiff, | : | |
| | : | Oral Argument Requested |
| v. | : | |
| | : | This Document Relates |
| GENERAL NUTRITION CORPORATION, | : | To All Actions |
| | : | |
| Defendant. | : | |
| | : | |
| (In re: GNC Picamilon/BMPEA Litigation) | : | |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SECOND AMENDED CONSOLIDATED COMPLAINT

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ....................................................................................... ii

I.     INTRODUCTION .......................................................................................1

II.    STATEMENT OF FACTS ..........................................................................3

III.   STATUTORY BACKGROUND ................................................................4

IV.   ARGUMENT .............................................................................................6

      A.    Plaintiffs Have Standing To Pursue Their Claims ........................6

            1.    Plaintiffs Have Demonstrated Injury-In-Fact ...............6

            2.    Plaintiffs Have Alleged Specific Misrepresentations and Omissions..........9

            3.    Plaintiffs' Injuries Occurred at the Point of Sale .......10

      B.    Plaintiffs' Claims Are Not Preempted ......................................12

            1.    Defendant's Preemption Arguments Are Premature .................12

            2.    Plaintiffs' State-Law Claims Are Not Preempted by 21 U.S.C. § 337(a) ........14

      C.    Neither Final Agency Action Nor Due Process Issues Preclude Plaintiffs' Suit .......................................19

            1.    FDA's Enforcement of the FDCA is Not Required in Order for Plaintiffs to Bring Parallel State Claims Seeking Relief for Consumer Harm.................19

            2.    This Lawsuit Does Not Deprive GNC of Due Process.............21

      D.    The "FDA Guarantee" Is Inapplicable To Plaintiffs' Claims................22

      E.    Plaintiffs State An Implied Warranty Claim Under The MMWA........................23

      F.    Plaintiffs Did Not Allege Liability Under The FDCA For Failure To Submit Premarket Notification ..........................................24

V.    CONCLUSION.........................................................................................25

# TABLE OF AUTHORITIES

**CASES**                                                                   **Page(s)**

*In re Adams Golf, Inc. Sec. Litig.*,
  381 F.3d 267 (3d Cir. 2004)..................................................................................12

*Aetna, Inc. v. Health Diagnostic Lab., Inc.*,
  No. 15-1868,
  2016 WL 6070542 (E.D. Pa. Oct. 17, 2016)..............................................................7

*Albertson's, Inc. v. Kanter*,
  555 U.S. 1097 (2009)..........................................................................................15

*Altria Grp., Inc. v. Good*,
  555 U.S. 70 (2008)..............................................................................................18

*American Tel. & Tel. Co. v. E.E.O.C.*,
  270 F.3d 973 (D.C. Cir. 2001)..............................................................................21

*In re Asbestos Prod. Liab. Litig. (No. VI)*,
  822 F.3d 125 (3d Cir. 2016)........................................................................12, 13, 14

*Ballentine v. United States*,
  486 F.3d 806 (3d Cir. 2007)..................................................................................21

*Bates v. Dow Agrosciences LLC*,
  544 U.S. 431 (2005)..........................................................................................19, 20

*Bates v. Gen. Nutrition Ctrs., Inc.*,
  897 F. Supp. 2d 1000 (C.D. Cal. 2012) ...................................................................24

*Bausch v. Stryker Corp.*,
  630 F.3d 546 (7th Cir. 2010) ............................................................................13, 17

*In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*,
  701 F. Supp. 2d 356 (E.D.N.Y. 2010) ..............................................................12, 17, 20

*Bennett v. Spear*,
  520 U.S. 154 (1997)............................................................................................21

*Biotics Research Corp. v. Heckler*,
  710 F.2d 1375 (9th Cir. 1983) ..............................................................................21

*Brazil v. Dole Food Co.*,
  935 F. Supp. 2d 947 (N.D. Cal. 2013) ...................................................................15

*Buckman Co. v. Plaintiffs' Legal Committee*,
    531 U.S. 341 (2001) ......................................................................................................17, 18

*Cardona v. Target Corp.*,
    No. CV 12-1148-GHK (SPx),
    2013 WL 1181963 (C.D. Cal. Mar. 20, 2013) ..........................................................11

*Cline v. Advanced Neuromodulation Sys., Inc.*,
    921 F. Supp. 2d 1374 (N.D. Ga. 2012) ......................................................................19

*Cody Labs., Inc. v. Sebelius*,
    446 F. App'x 964 (10th Cir. 2011) .............................................................................21

*Cottrell v. Alcon Labs.*,
    874 F.3d 154 (3d Cir. 2017)................................................................................ *passim*

*Danvers Motor Co. v. Ford Motor Co.*,
    432 F.3d 286 (3d Cir. 2005)......................................................................7, 11, 12

*Dietary Supplement Coalition, Inc. v. Sullivan*,
    978 F.2d 560 (9th Cir. 1992) .....................................................................................21

*Dougherty v. Bank of Am., N.A.*,
    No. 2:15-CV-01226-TLN-CKD,
    2016 WL 1337536 (E.D. Cal. Apr. 5, 2016)..............................................................17

*Estrada v. Johnson & Johnson*,
    Civ. No. 16-7492 (FLW),
    2017 WL 2999026 (D.N.J. July 14, 2017)..............................................................9, 10

*In re Farm Raised Salmon Cases*,
    175 P.3d 1170 (Cal. 2008) .........................................................................................15

*Forcellati v. Hyland's, Inc.*,
    No. CV 12-1983-GHK (MRWx),
    2015 WL 9685557 (C.D. Cal. Jan. 12, 2015) ............................................................24

*In re Fosamax (Alendronate Sodium) Prods. Liab. Litig.*,
    852 F.3d 268 (3d Cir. 2017)........................................................................................13

*Gelber v. Stryker Corp.*,
    788 F. Supp. 2d 145 (S.D.N.Y. 2011)........................................................................19

*Hairston v. S. Beach Beverage Co.*,
    No. CV 12-1429-JFW (DTBx),
    2012 WL 1893818 (C.D. Cal. May 18, 2012) ...........................................................24

iii

*Heckler v. Chaney*,
  470 U.S. 821 (1985) ................................................................................18, 22

*Holistic Candlers and Consumers Ass'n. v. FDA*,
  664 F.3d 940 (D.C. Cir. 2012) ...............................................................21

*Hughes v. Ester C Co.*,
  930 F. Supp. 2d 439 (E.D.N.Y. 2013) ....................................................12

*In re Hydroxycut Mktg. & Sales Practices Litig.*,
  801 F. Supp. 2d 993 (S.D. Cal. 2011) ....................................................12

*Jablonski v. Pan Am. World Airways, Inc.*,
  863 F.2d 289 (3d Cir.1988) .....................................................................13

*James v. Johnson & Johnson Consumer Cos.*,
  No. 10-cv-03049 (DMC)(JAD),
  2011 WL 198026 (D.N.J. Jan. 18, 2011) ................................................11

*Jasper v. Musclepharm Corp.*,
  No. 14-CV-02881-CMA-MJW,
  2015 WL 2375945 (D. Colo. May 15, 2015)...........................................24

*Jones v. Bock*,
  549 U.S. 199 (2007)..................................................................................13

*Kanter v. Warner-Lambert Co.*,
  99 Cal. App. 4th 780 (2002) ....................................................................24

*Koronthaly v. L'Oreal USA, Inc.*,
  374 F. App'x 257 (3d Cir. 2010) ..............................................8, 9, 10, 11

*Kwikset Corp. v. Superior Court*,
  51 Cal. 4th 310 (2011) .......................................................................10, 12

*Medley v. Johnson & Johnson Consumer Cos.*,
  No. 10-cv-02291 (DMC)(JAD),
  2011 WL 159674 (D.N.J. Jan. 18, 2011) ............................................11, 12

*Medtronic, Inc. v. Lohr*,
  518 U.S. 470 (1996)............................................................................16, 17

*Mut. Pharm. Co. v. Watson Pharm., Inc.*,
  No. CIV.A. 09-5421 (GEB),
  2010 WL 446132 (D.N.J. Feb. 8, 2010) ...............................................20, 21

*Pom Wonderful LLC v. Coca-Cola Co.*,
  134 S. Ct. 2228 (2014)......................................................................14

*Reiter v. Cooper*,
  507 U.S. 258 (1993).........................................................................22

*Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*,
  324 F.3d 726 (D.C. Cir. 2003).............................................................21

*Riley v. Cordis Corp.*,
  625 F. Supp. 2d 769 (D. Minn. 2009)..............................................17, 18

*Schmidt v. Skolas*,
  770 F.3d 241 (3d Cir. 2014)...............................................................12

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540, 1547 (2016)........................................................6, 7, 8

*Stewart v. Smart Balance, Inc.*,
  No. CIV.A. 11-6174 (JLL),
  2012 WL 4168584 (D.N.J. June 26, 2012) ............................................24

*ThermoLife Int'l, LLC v. Gaspari Nutrition Inc.*,
  No. 14-15180,
  2016 WL 1460171 (9th Cir. Apr. 14, 2016) ...............................19, 20, 21

*Trudeau v. Federal Trade Comm'n*,
  456 F.3d 178 (D.C. Cir. 2006).............................................................21

*Turek v. Gen. Mills, Inc.*,
  662 F.3d 423 (7th Cir. 2011) ..............................................................15

*United States v. Martin*
  454 F. Supp. 2d 278 (E.D. Pa 2006) .....................................................14

*Wyeth v. Levine*,
  555 U.S. 555 (2009).........................................................................19

*Young v. Johnson & Johnson*,
  Civ. No. 11-4580 (JAP),
  2012 WL 1372286 (D.N.J. Apr. 19, 2012) .............................................11

## STATUTES & RULES

Cal. Bus. & Prof. Code § 17204 ...............................................17

California Health & Safety Code § 110100(a) ...............................16
California Health & Safety Code § 110660 ...................................16

Dietary Supplement Health and Education Act ("DSHEA"),
 Pub. L. No. 103-417, 108 Stat. 4325 ...............................4, 19

Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. § 136 *et seq* ........19, 20

Federal Rules of Civil Procedure,
 Rule 8(a) ...........................................................................1
 Rule 8(c) .........................................................................13
 Rule 9(b) ...........................................................................1
 Rule 12(b)(6) .......................................................12, 13, 14
 Rule 12(c) ...............................................................12, 13
 Rule 15 ...........................................................................25

Food, Drug and Cosmetic Act ("FDCA"), 21 U.S.C. § 301, *et seq.* ..................... *passim*
 § 303(c) ...........................................................................22
 § 321(ff) .......................................................................4, 5
 § 321(n) ............................................................................4
 § 331 .............................................................................25
 § 333(a)(1) ......................................................................22
 § 333(c) .....................................................................22, 23
 § 337 .......................................................................... *passim*
 § 342(f) ...........................................................................5
 § 343 ......................................................................4, 5, 16
 § 343-1 .............................................................2, 14, 19, 20
 § 350b ....................................................................5, 6, 21, 25

Magnuson-Moss Warranty Act ("MMWA") ....................................... *passim*

National Labeling and Education Act of 1990 ("NLEA"),
 Pub L. No. 101-535, 104 Stat. 2353 ...............................4, 14

United States Code,
 15 U.S.C. § 2301 ...............................................................24
 15 U.S.C. § 2311(d) ...........................................................23

## OTHER AUTHORITIES

Br. for United States as Amicus Curiae,
  2014 WL 827980,
  *POM Wonderful*, 134 S. Ct. 2228 ......................................................................18, 20

Br. for United States as Amicus Curiae,
  2015 WL 5151069,
  *Albertson's, Inc. v. Kanter*, 555 U.S. 1097 (2009) ..............................................16, 17

Code of Federal Regulations,
  21 C.F.R. § 10.30(k) ...........................................................................................18, 21
  21 C.F.R. § 101.36 ..................................................................................................4, 5
  21 C.F.R. § 100.1(c)(4) ............................................................................................20
  21 C.F.R. § 101.4(g) .................................................................................................5

State Enforcement Provisions of the Nutrition Labeling and Education Act of 1990,
  1993 WL 1544,
  58 Fed. Reg. 2457-01 (Jan. 6, 1993) ........................................................................15

Plaintiffs, on behalf of themselves and members of the putative class, submit the following opposition to Defendant General Nutrition Corporation's ("Defendant's") Motion to Dismiss Second Amended Consolidated Complaint ("Motion" or "Mot.").

I.     **INTRODUCTION**

Plaintiffs' Second Amended Consolidated Class Action Complaint ("SAC" or "Complaint") resolves the issues raised by the Court in its Opinion dismissing Plaintiffs' First Amended Consolidated Class Action Complaint ("Opinion" dismissing the "FAC," ECF No. 82). The SAC clarifies that the basis of Plaintiffs' claims is not personal injury from consumption of the products at issue (the "Products"), but instead economic damages stemming from Defendant's false and misleading marketing and sale of the Products containing picamilon, BMPEA, and *acacia rigidula* (collectively "the Ingredients") as "Dietary Supplements" containing "Dietary Ingredients."  But the Ingredients are plainly not lawful dietary ingredients under the Food, Drug and Cosmetic Act ("FDCA"), and therefore cannot be lawfully marketed as dietary supplements containing dietary ingredients.

Defendant responds with a Motion to Dismiss that largely ignores or misconstrues a number of inconvenient facts in the hope that they will go away.  For example, Defendant was aware as early as 2007 that the Ingredients were not lawful dietary ingredients, but nonetheless continued to market and sell the Products as dietary supplements for some time thereafter. Defendant also ignores the fact that it failed to submit a new dietary ingredient notification ("NDI") to the Food and Drug Administration ("FDA") for sale of products containing the Ingredients, a legal prerequisite for selling any products containing ingredients not marketed prior to October 15, 1994, as was the case with the Ingredients.  Defendant does not contest that Plaintiffs have met their pleading requirements under Fed. R. Civ. P. 8(a) and 9(b).  Faced with allegations that are more than sufficient to satisfy Plaintiffs' pleading requirements, Defendant rehashes many of the same legal arguments as in its first motion to dismiss.

First Defendant argues that Plaintiffs have failed to allege the concrete injury element of standing.  But Plaintiffs' garden variety allegations of economic injury are based on specific

misrepresentations on the Products' labels. Moreover, Plaintiffs' injuries occurred at the point of sale in being induced to purchase mislabeled, unlawful Products, and are not based on a speculative possibility of future physical injury. Accordingly, Plaintiffs have addressed the Court's standing concerns by clearly alleging a sufficient economic injury-in-fact.

Defendant's claim that Plaintiffs' claims are preempted by the FDCA is premature, as preemption is an affirmative defense that cannot be raised as a basis for dismissal at this stage absent unusual circumstances not present here. Regardless, Defendant's preemption defense fails on the merits. The preemption issue before the Court is whether 21 U.S.C. § 337 precludes Plaintiffs' suit under state law to enforce parallel state requirements authorized by Section 343-1. Courts have repeatedly held that there is no preemption of parallel state law claims, and the FDA agrees. Defendant cites no case to reach a contrary result, and Plaintiffs are aware of none.

Defendant claims that a final FDA action must be reached regarding the Ingredients' legality before this suit can proceed, but this is incorrect because, *inter alia*, agency action is not a prerequisite or requirement for private plaintiffs to bring parallel claims seeking relief for consumer harm. It would also be inequitable to require agency action prior to Plaintiffs' suit in light of Defendant's failure to pursue the pre-market notification process despite being aware that, as early as 2007, certain of the Ingredients were not permitted to be sold under the FDCA.

Defendant also argues that the "FDA Guarantee" provides Defendant immunity from liability because it purportedly received "good faith guarantees" of the Products' legality from its manufacturers. But this argument fails because, among other reasons, the so-called "guarantee" only applies to allegations of criminal malfeasance, as Defendant itself concedes.

Defendant contends that Plaintiffs' Magnuson-Moss Warranty Act ("MMWA") claim must be dismissed because the MMWA does not apply to any written warranty that is governed by Federal law. But Defendant's argument fails because Plaintiffs' MMWA claims are grounded in Defendant's breach of the implied warranty of merchantability, and not any written warranty governed by Federal law.

Defendant misconstrues Plaintiffs' SAC as alleging that Defendant failed to follow the FDCA's requirement to submit a notification for new dietary ingredient ("Premarket Notification" of an "NDI"). But this argument mischaracterizes the gravamen of Plaintiffs' complaint, which is grounded on various state and federal misrepresentation violations against Defendant, and not in any failure by Defendant to submit a Premarket Notification.

Finally, Defendant has re-filed a declaration by one of its employees that is filled with hearsay, rank speculation and improper factual assumptions in Defendant's own favor. This declaration should be rejected in its entirety, and only serves to demonstrate that there are issues of fact making denial of Defendant's Motion appropriate.[1]

## II.     STATEMENT OF FACTS

Defendant is the world's largest retailer of sports and dietary supplements. *See* ¶26.[2] Defendant markets and sells numerous types of supplements in stores throughout the United States, including supplements that contain picamilon, BMPEA and *acacia rigidula*. *See* ¶88. Products containing these Ingredients have not been approved for sale in the United States, a fact that the FDA has recently reiterated. *See* ¶¶46, 54, 61-63. Plaintiffs themselves even commissioned laboratory testing of *acacia rigidula* extract which confirmed that BMPEA did not naturally occur in the *acacia rigidula* sample. *See* ¶66.

Defendant has control over the labeling, production, and marketing of its vendors' products within its stores. *See* ¶¶79-87. Defendant was aware of the illegality of marketing the Ingredients as "dietary ingredients" (and products containing the Ingredients as "dietary supplements") as early as 2007 (in the case of picamilon). *See* ¶¶2-3, 47-48, 68-70. Despite this, even after becoming aware of the issues surrounding the sale of products containing the Ingredients, Defendant continued to promote and sell such Products while falsely holding them

---

[1] Defendant relies on the Declaration of Defendant's employee Stephen Cherry (the "Cherry Declaration."). The Cherry Declaration should be stricken for the reasons stated in the concurrently filed motion to strike. Defendant has also submitted a request for judicial notice of certain materials attached to the Cherry Declaration and the declaration of Amy B. Alderfer ("Alderfer Decl."), ECF. No. 86-5. Plaintiffs are submitting an opposition to the request for judicial notice concurrently with this brief.

[2] "¶" refers to the numbered paragraph of the SAC, ECF. No. 84.

out to contain legal "dietary ingredients." *See* ¶¶43, 47-50, 68-71, 83-84, 88. Apart from the present suit, Defendant's practices have led to, *inter alia*, a lawsuit by the Oregon Attorney General, as well as product recalls and bars on selling products containing certain of the Ingredients by Health Canada and the European Food Standards Agency. *See* ¶¶49, 59, 72.

## III.    STATUTORY BACKGROUND

In 1990, Congress amended the FDCA to address nutrition labeling for most food products. *See* National Labeling and Education Act of 1990 ("NLEA"), Pub L. No. 101-535, 104 Stat. 2353. In 1994, Congress again amended the FDCA with the enactment of the Dietary Supplement Health and Education Act ("DSHEA"), Pub. L. No. 103-417, 108 Stat. 4325. Finished dietary supplement products and dietary ingredients are generally regulated as foods under the FDCA, as amended by DSHEA.

As a food, a dietary supplement may not be marketed if it is misbranded. *See* 21 U.S.C. § 343. Section 343 lists twenty-three reasons why a food "shall be deemed misbranded," several of which apply to dietary supplement labeling and advertising. *Id.* While these provisions largely address specific labeling features, the FDCA contains a catch-all provision that deems a product misbranded if "its labeling is false or misleading in any particular." 21 U.S.C. § 343(a)(1). A product may be misbranded because its labeling is misleading "not only [on account of] representations made or suggested by statement, word, design, device, or any combination thereof, but also the extent to which the labeling or advertising fails to reveal facts material in the light of such representations . . . ." 21 U.S.C. § 321(n).

Section 403 of the FDCA, 21 U.S.C. § 343, and regulations of the FDA promulgated thereunder, *see* 21 C.F.R. § 101.36, require dietary supplements to be labeled with a "nutrition label" that includes, among other things, a heading, "Supplement Facts," and then, between two heavy bars, a list of the "dietary ingredients," as defined by 21 U.S.C. § 321(ff), that are present in the dietary supplement. 21 U.S.C § 343(s)(2)(A); 21 C.F.R. § 101.36(b)(1)(i), (b)(2) and (3), and (c), (d), and (e)(1) and (6). The FDCA defines a dietary ingredient as a vitamin; mineral; herb or other botanical; amino acid; dietary substance for use by man to supplement the diet by

4

increasing the total dietary intake; or a concentrate, metabolite, constituent, extract, or combination of the preceding substances.  *See* 21 U.S.C. § 321(ff).

The FDA's regulations require dietary supplements to list immediately below the nutrition label any "Ingredients"/"Other ingredients" that are present in the dietary supplement, and include any ingredients that are not "dietary ingredients" or do not contain "dietary ingredients" "such as excipients, fillers, artificial colors, artificial sweeteners, flavors, or binders."  21 CFR § 101.4(g).  The FDA's regulations also require the source ingredients that supply the dietary ingredients to be identified either within the nutrition label or as a part of the "Ingredients"/"Other ingredients" list immediately below the nutrition label.  If the source ingredient is a "botanical," the statutes and the regulations require the listing to specify the "part of the plant from which the ingredient is derived."  21 U.S.C. § 343(s)(2)(C), 21 CFR § 101.36.

The effect of these statutes and regulations is that when a seller of a dietary supplement (among other persons) lists an ingredient on a nutrition label under Supplement Facts and between the two heavy bars, it constitutes a representation to consumers by the seller (among other persons) that the ingredient is a legal "dietary ingredient" as defined in FDCA § 201(ff), 21 U.S.C. § 321(ff).  This listing of dietary ingredients is particularly important because the presence of a "dietary ingredient" in a product otherwise intended to supplement the diet is what *makes the product a "dietary supplement"* under the FDCA—the particular food product category that consumers who purchase dietary supplements are in the market for, and the chief market in which GNC participates.

Supplements containing a "new dietary ingredient," defined as an ingredient not marketed in the United States in a dietary supplement before October 15, 1994, are deemed to be adulterated under 21 U.S.C. § 342(f) unless  (i) the dietary ingredient is present in the food supply as an article used for food in the same chemical form in which it is presented in the dietary supplement; or (ii) the manufacturer or distributor can show that the new ingredient will reasonably be expected to be safe under the conditions recommended or suggested in the labeling.  *See* 21 U.S.C. § 350b(a).  To make this evidentiary showing, the manufacturer or

distributor must submit an NDI to the FDA establishing a reasoned basis for the new ingredient's safety profile. *See* 21 U.S.C. § 350b(a)-(b). The new dietary ingredient may be marketed or sold 75 days after the FDA publicly acknowledges receipt of the premarket application if it takes no action, but not before. *See* 21 U.S.C. § 350b(a).

## IV.    ARGUMENT

### A.    Plaintiffs Have Standing To Pursue Their Claims

The SAC remedies the Court's prior concern that Plaintiffs lack Article III standing for failure to allege an injury-in-fact. *See* Opinion at 13-17. The SAC makes clear that Plaintiffs' allegations are grounded in Defendant's specific misrepresentations on the Products' labels that the Products were lawful "dietary supplements" containing lawful "dietary ingredients." *See, e.g.,* ¶¶1-6, 30-39. Each Product purchased by Plaintiffs stated on the front of its packaging that it was a "dietary supplement," and listed picamilon, BMPEA, or *acacia rigidula* as "dietary ingredients." *See* ¶¶49-50, 57, 76. Plaintiffs reviewed and reasonably relied on the Products' labels in purchasing the Products and, when doing so, reasonably believed the Products to be lawful dietary supplements with lawful dietary ingredients. *See* ¶23. The SAC makes clear that Plaintiffs' alleged injury is not potential personal injury in the future, but economic injury when Plaintiffs paid Defendant for lawful dietary supplements and received the opposite. *See, e.g.,* ¶6.

Plaintiffs are required to allege the minimal requirements of Article III standing: "(1) an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Cottrell v. Alcon Labs.*, 874 F.3d 154, 162 (3d Cir. 2017) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1543 (2016)). "In assessing whether a plaintiff has carried this burden," courts must "separate [their] standing inquiry from any assessment of the merits of the plaintiff's claim." *Id.*

### 1.    Plaintiffs Have Demonstrated Injury-In-Fact

The sole standing requirement at issue in this case is injury-in-fact. The alleged injuries here—Plaintiffs' overpayment for illegally labeled and marketed products—are clearly and fairly traceable to Defendant who exercised control over the Products' labels and sold the Products

directly to Plaintiffs. *See* ¶¶79-87. Courts have also consistently found that consumer claims like Plaintiffs' are redressable by a favorable judicial decision. *See Aetna, Inc. v. Health Diagnostic Lab., Inc.*, No. 15-1868, 2016 WL 6070542, at *6 (E.D. Pa. Oct. 17, 2016) ("We find no reason why Aetna's monetary injuries could not be redressed with a favorable decision.") (citations omitted).

To establish an injury-in-fact, Plaintiffs must show that they "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S. Ct at 1548 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). The purpose of the injury-in-fact requirement is "to distinguish a person with a direct stake in the outcome of a litigation—even though small—from a person with a mere interest in the problem." *Cottrell*, 874 F.3d at 162 (internal quotations omitted)). Plaintiffs' allegations of injury are no different than those in the Third Circuit's recent *Cottrell* case: "Plaintiffs claim economic interests: interests in the money they had to spend on [legal dietary supplements]." *Id.* at 165. "They seek monetary compensation for Defendant['s] conduct that they allege caused harm to these interests. Plaintiffs' claimed interests arise from state consumer protection statutes that provide monetary relief to private individuals who are damaged by business practices that violate those statutes." *Id.*

The Third Circuit recently reiterated that this requirement "'is not Mount Everest.'" *Id.* (quoting *Danvers Motor Co. v. Ford Motor Co.*, 432 F.3d 286, 294 (3d Cir. 2005)). Instead, "the injury-in-fact requirement is very generous to claimants, demanding only that the claimant allege some specific, identifiable trifle of injury." *Id.* (internal quotations and brackets omitted). "Typically, a plaintiff's allegations of financial harm will easily satisfy each of these components, as financial harm is a 'classic' and 'paradigmatic form[]' of injury in fact." *Id.* at 163 (quoting *Danvers*, 432 F.3d at 291, 293). In fact, "where a plaintiff alleges financial harm, standing 'is often assumed without discussion.'" *Id.* (quoting *Danvers*, 432 F.3d at 293).

Defendant disregards the Third Circuit's mandate in *Cottrell* that "a valid claim for relief is *not* a prerequisite for standing," and caution that courts not "flip[] the standing inquiry inside

out" by "morphing it into a test of the legal validity of the plaintiffs' claims . . ." *Id.*, 874 F.3d at 166 (emphasis in original). But Defendant asks the Court to do just this and address merits issues before standing. *See, e.g.,* Motion at 14 ("Plaintiffs did not allege what material facts GNC failed to disclose about the dangers of ingesting those substances or whether GNC had a duty to do so."); *id.* at 15 ("Plaintiffs provide no specificity whatsoever regarding what (if any) statements they read that they relied on and which induced them in purchasing the [Products].").

Plaintiffs have also alleged unjust enrichment, and other claims seeking restitution for Defendant's unfair practices, based on Defendant having retained profits from sales of the Products which should never have been marketed or sold as dietary supplements containing dietary ingredients. These claims "are not contingent on a plaintiff's allegation of damages beyond the violation of his private legal right." *Spokeo*, 136 S. Ct. at 1551 (Thomas, J., concurring) (citing Brief for Restitution and Remedies Scholars as Amici Curiae ("*Spokeo Amicus*") at 6-18).[3]

Plaintiffs' SAC sufficiently alleges a concrete economic injury and addresses the concerns raised by the Court in its Opinion. In particular, Plaintiffs have satisfied the Third Circuit's requirement in *Koronthaly v. L'Oreal USA, Inc.*, 374 F. App'x 257 (3d Cir. 2010) by alleging that they "received a product that . . . was worth objectively less than what one could reasonably expect." *Id.* at 259. Specifically, Plaintiffs have alleged that (1) they went to Defendant's stores to purchase legitimate "dietary supplements," Defendant's primary product; (2) were sold Products clearly labeled as "dietary supplements" containing lawful "dietary ingredients;" but (3) the Products were not dietary supplements but were, in fact, adulterated, illicit merchandise. *See* ¶¶1-6, 11-24, 30-39. Because adulterated products are plausibly "worth objectively less than what one could reasonably expect," *Koronthaly*, 374 F. App'x at 259,

---

[3] *See also Spokeo* Amicus at 26 ("To have standing to sue on a restitutionary claim for defendant's wrongful profits, plaintiff had to have a personal stake in recovering defendant's profits — not a personal stake in his own non-existent losses. Claims in restitution and unjust enrichment are based on defendant's gains, and standing depends on plaintiff's personal stake in those gains.").

Plaintiffs have plausibly alleged that they paid more for the Products than they otherwise would have and established an injury-in-fact.

The allegations in the SAC differ from *Koronthaly* and other cases cited by Defendant in a number of ways. *Koronthaly*, for example, involved claims based on purported excess lead levels in lipstick, but the Third Circuit noted that the FDA did not regulate the presence of lead in lipstick and, furthermore, issued a "report finding that the lead levels in [the defendant's] lipstick were not dangerous and did not require warnings." *Id.* at 258-59. By contrast, here the FDA has issued warning letters stating, *inter alia*, that the Products are *not* lawful dietary supplements because they do not contain lawful dietary ingredients.[4] The Third Circuit also upheld the dismissal of Koronthaly's claim because it held that the claim was ultimately based *entirely* on the fact that the level of lead in the lipstick was "unacceptable to her." *Id.* at 259. Here, again, the FDA has stated that the Products are unlawful and are not what they were represented to be—lawful dietary supplements containing dietary ingredients.[5]

### 2. Plaintiffs Have Alleged Specific Misrepresentations and Omissions

The Court dismissed Plaintiffs' prior complaint on the ground, *inter alia*, that Plaintiffs failed to allege that they were induced to purchase the Products based on specific misrepresentations by Defendant. *See* Opinion at 17. This has been cured by the SAC, where Plaintiffs' claims arise from Defendant's specific misrepresentations that the Products were lawful dietary supplements containing lawful dietary ingredients. *See, e.g.,* ¶23.

For this and other reasons, Plaintiffs' claims are not undermined by *Estrada v. Johnson & Johnson*, Civ. No. 16-7492 (FLW), 2017 WL 2999026 (D.N.J. July 14, 2017), cited by Defendant and relied upon by the Court in dismissing Plaintiffs' prior complaint. *See* Motion at

---

[4] *See* ¶¶ 46, 54; ECF No. 86-2 at 13 ("Declaring BMPEA in your product labeling as a dietary ingredient causes your products marketed as dietary supplements to be misbranded . . . in that the labeling is false or misleading.").

[5] The Court previously took issue with Plaintiffs' allegations to the extent that Plaintiffs based their standing on a failure to receive the "benefit of the bargain." Opinion at 14-16. However, Plaintiffs raise this theory only with respect to their breach of implied warranty claim under the MMWA. *See* ¶104. Otherwise, Plaintiffs have followed *Koronthaly*'s mandate that they plausibly allege that the Products were "worth objectively less than what one could reasonably expect." *Id.*, 374 Fed. App'x at 259.

13-14; Opinion at 11-17.  The Court cited *Estrada* for the proposition that the plaintiff failed to allege a specific misrepresentation made by the defendant.  *See* Opinion at 12-13 n.6.  The plaintiff in *Estrada* alleged that "she purchased [the product] under the belief that it was safe and, had she known [about its potential health hazards], she would not have purchased the product."  *Id.* at *16-17.  However, there was no specific representation by the defendant that the baby powder was "safe."  *Id.* at *34.  Conversely, Plaintiffs have clearly alleged the specific misrepresentations discussed herein.  *See, e.g.,* ¶23.[6]

Also, unlike in *Estrada* where the court had previously found that the plaintiff "received exactly what she paid for," *id.*, 2017 WL 2999026, at *7, here Plaintiffs paid for lawful dietary supplements containing lawful dietary ingredients and received the opposite.  *See, e.g.,* ¶¶1-6.  *Estrada* also distinguished its facts from other cases where "the plaintiffs pled facts sufficient for the court to conclude that they would not have purchased the product at issue but for a specific misrepresentation made by the defendants."  *Id.*, 2017 WL 2999026 at *9.[7]  Again, Plaintiffs have pled such facts here.  *See, e.g.*, ¶6, 24.

### 3.        Plaintiffs' Injuries Occurred at the Point of Sale

The SAC further clarifies that Plaintiffs' injuries occurred at the point of sale.  The crux of Plaintiffs' allegations is that Defendant, through the Products' labeling, misrepresented to Plaintiffs at the point of sale that the Products were lawful "Dietary Supplements" containing lawful "Dietary Ingredients."  *See, e.g.,* ¶¶1-6, 30-39.  The injury occurred when Plaintiffs, induced by the misrepresentations on the label, purchased the Products that they otherwise would not have purchased, or would have only purchased at a lower cost.  See ¶¶ 23-24.  Accordingly,

---

[6] Plaintiffs need not allege an alternative product that they would have purchased in order to demonstrate economic injury.  Despite this, Defendant sold numerous other "dietary supplements" marketed for similar purposes that were lawful dietary supplements containing legitimate dietary ingredients.  *See* ¶¶25, 41-42

[7] One such case *is Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011), where the plaintiffs alleged economic injury after purchasing products falsely labeled "Made in U.S.A."  *Id.* at 316.  The *Kwikset* court found economic injury-in-fact in holding that "'plaintiffs who can truthfully allege they were deceived by a product's label into spending money to purchase the product, and would not have purchased it otherwise, . . . have standing to sue.'"  *Id.* at 317.  "In other words, the court found that the plaintiffs did not receive the benefit of their bargain because they purchased lockets that the defendant had represented were manufactured in the United States, but were not."  *Estrada*, 2017 WL 2999026 at *10.

Plaintiffs' claims are not grounded in "possible future injury." Opinion at 14. *See Cottrell*, 874 F.3d at 168 (holding that the plaintiffs' claimed financial harm "has *already* occurred.") (emphasis in original) (citing, *inter alia*, *Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011) ("Allegedly, plaintiffs spent money that, absent defendants' actions, they would not have spent . . . . This is a quintessential injury-in-fact.")).

Defendant's cited cases are inapposite. In *Young v. Johnson & Johnson*, Civ. No. 11-4580 (JAP), 2012 WL 1372286 (D.N.J. Apr. 19, 2012), as in *Koronthaly*, the FDA again had approved the labeling of the product at issue, permitting that even products with minimal amounts of trans fats can be marketed as having "NO TRANS FAT." *Id.* at *1. Moreover, the defendant's packaging *disclosed* this fact. *See id.* at *3. *Young* also relied heavily on the plaintiff's own "subjective belief as to the unhealthy nature of even small amounts of trans fats." *Id.* at 4. By contrast here the FDA has taken the opposite position on the lawfulness of Defendant's Products, and Plaintiffs' allegations are not based merely on their "subjective[] belie[fs]" but on, among other things, the FDA's own assessments of the Products. *Id.* at *4 n.4.

*James v. Johnson & Johnson Consumer Cos.*, No. 10-cv-03049 (DMC)(JAD), 2011 WL 198026 (D.N.J. Jan. 18, 2011) and *Medley v. Johnson & Johnson Consumer Cos.*, No. 10-cv-02291 (DMC)(JAD), 2011 WL 159674 (D.N.J. Jan. 18, 2011), involved claims grounded in the levels of toxicity in baby shampoo and the potential for future physical harm from the product. Accordingly, the court characterized the plaintiffs' claims as follows: "Plaintiffs bought and used shampoo, and subsequently wished that they had not done so because they feared for the future safety of their children." *Id.* at *2. Here, as clarified by the SAC, Plaintiffs allege that Defendant represented that the Products were lawful dietary supplements, Plaintiffs purchased the Products in whole or in part for that reason and, because this was untrue, Plaintiffs purchased Products that were "worth objectively less than what one could reasonably expect." *Koronthaly*, 374 Fed. App'x at 259.[8] In addition to *Cottrell*, *Danvers Motor* and *Koronthaly* in the Third

---

[8] Other courts have disagreed with *Medley*'s focus on post-consumption injury in a case alleging economic loss. *See Cardona v. Target Corp.*, No. CV 12-1148-GHK (SPx), 2013 WL 1181963, at *3, 5 (C.D. Cal. Mar. 20, 2013) (in

Circuit, *supra*, there is a considerable body of case law confirming that this type of economic injury confers Article III standing.[9]  Here, Plaintiffs' claims fit squarely within this well-established body of law that economic injury is a sufficient basis for standing.[10]

## B.     Plaintiffs' Claims Are Not Preempted

### 1.     Defendant's Preemption Arguments Are Premature

Rather than file an answer to plead preemption as an affirmative defense and move for judgment on the pleadings under Rule 12(c), Defendant moved for dismissal under Rule 12(b)(6).  Defendant's motion to dismiss based on preemption is premature.

"[F]ederal preemption is an affirmative defense on which the defendant bears the burden of proof."  *In re Asbestos Prod. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 n.6 (3d Cir. 2016).  "Under Federal Rule of Civil Procedure 8, a complaint need not anticipate or overcome affirmative defenses[.]"  *Schmidt v. Skolas*, 770 F.3d 241, 248 (3d Cir. 2014).  Accordingly, "an affirmative defense may not be used to dismiss a plaintiff's complaint under Rule 12(b)(6)."  *In re Adams Golf, Inc. Sec. Litig.*, 381 F.3d 267, 277 (3d Cir. 2004) (citing *Doe v. GTE Corp.*, 347

---

case alleging that products labeled as "pure honey" were misleading, "[g]iven that the purpose of labeling is to provide information to the consumers at the point of purchase, . . . we decline to follow the *Medley* approach, which measures injury after consumption.  Instead, we agree with the *Brod* and *Kwikset* approach, which measures the relevant injury at the point of purchase, *i.e.*, whether the plaintiff relied on the representation in the labeling in making the purchase and whether she would have made the purchase had the representations been different.").

[9] *See, e.g., Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 454 (E.D.N.Y. 2013) (consumers alleging economic injuries as result of purchasing supplements  based on false, misleading, deceptive and unfair labeling, and who would not have purchased the products had the supplements been labeled accurately, sufficiently alleged injury-in-fact); *In re Hydroxycut Mktg. & Sales Practices Litig.*, 801 F. Supp. 2d 993, 1002-03 (S.D. Cal. 2011) (consumers who purchased weight loss supplements allegedly presenting serious health risks had Article III standing to pursue claims despite not been physically harmed by the product); *In re Bayer Corp. Combination Aspirin Prods. Mktg. Sales Practices Litig.*, 701 F. Supp. 2d 356 (E.D.N.Y. 2010) (consumers who purchased aspirin products with labels misrepresenting virtues of products had Article III standing, even though none suffered physical harm, as plaintiffs were injured by paying for product that delivered less than what was bargained for).

[10] Defendant also overlooks the "unfair" prongs of Plaintiffs' consumer protection statutory claims, *see, e.g., ¶¶*155, 164, 191, 203, 256, 270, 276, 286, which afford Plaintiffs monetary relief for damages resulting from Defendant's unfair business practices, in addition to Plaintiffs' claims based on the fraud or deception prongs of the those statutes.  *See Cottrell*, 874 F.3d at 165 ("Plaintiffs' claimed interests arise from state consumer protection statutes that provide monetary relief to private individuals who are damaged by business practices that violate those statutes.  These claims fit comfortably in categories of 'legally protected interests' readily recognized by federal courts.") (citations omitted).  Therefore, whether under the fraud/deception or the unfair prongs of the consumer protection claims in the SAC, Plaintiffs allege a legally cognizable harm—economic injury—that has long been held sufficient to confer Article III standing.  *See Danvers*, 432 F.3d at 293; *Cottrell*, 874 F.3d at 162-63.  In fact, Plaintiffs are in a superior position than *Cottrell* because they allege both unfair practices and consumer fraud.

F.3d 655, 657 (7th Cir. 2003)). "This allocation of the burden of proof suggests that a motion under Rule 12(c) for judgment on the pleadings is a more appropriate procedural vehicle for dismissing cases on preemption grounds, instead of a motion under Rule 12(b)(6), except for cases in which preemption is manifest in the complaint itself." *In re Asbestos*, 822 F.3d at 133 n.6 (citations omitted); *see also Bausch v. Stryker Corp.*, 630 F.3d 546, 561 (7th Cir. 2010) (preemption defense not properly presented under Rule 12(b)(6)). That said, "preemption can be, and sometimes must be, a fact question for the jury," *In re Fosamax (Alendronate Sodium) Prods. Liab. Litig.*, 852 F.3d 268, 288 (3d Cir. 2017), in which case a Rule 12(c) motion will fail because the movant will not be able to "clearly establish[ ] that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290 (3d Cir. 1988) (citation omitted).

Defendant argues that preemption is manifest in Plaintiffs' complaint because Plaintiffs allege that Defendant's product labeling violates federal law. Defendant misunderstands what it means for an affirmative defense to be manifest in a complaint. "Whether a particular ground for opposing a claim may be the basis for dismissal for failure to state a claim depends on whether the allegations in the complaint suffice to establish that ground, not on the nature of the ground in the abstract." *Jones v. Bock*, 549 U.S. 199, 215 (2007) (discussing affirmative defense of statute of limitations, and citing Fed. R. Civ. P. 8(c)). That rule, applied here, means that Plaintiffs must assert in a pleading facts that in and of themselves suffice to establish Defendant's preemption defense.

Plaintiffs have not done so. Had Plaintiffs alleged that Defendant's labeling *complies* with federal law, then the Court would have had to accept as true the allegation that federal law renders Defendant's labeling non-misleading. An allegation along these lines would have allowed Defendant to argue in a Rule 12(b)(6) motion that Defendant's labeling cannot be misleading under state law because federal law renders the labeling non-misleading.

But that is not what Plaintiffs have alleged. Rather, Plaintiffs have alleged that Defendant's labeling is *misleading* under federal and state law. Further, Plaintiffs have asserted

garden-variety consumer protection and warranty claims predicated on Defendant's breach of duties owed to them; they do not seek to enforce federal law directly or any breach of a duty owed to the FDA. Plaintiffs' action to enforce state laws that impose requirements which parallel federal requirements is fundamentally a state-law action, not an action to enforce the FDCA. *See infra* section IV.B.4. Accordingly, Plaintiffs' allegations do not "suffice to establish" a preemption defense and Defendant's attempt to raise preemption in a Rule 12(b)(6) motion is premature. *See In re Asbestos*, 822 F.3d at 133 n.6.

### 2. Plaintiffs' State-Law Claims Are Not Preempted by 21 U.S.C. § 337(a)

Defendant no longer argues that Plaintiffs' claims are expressly preempted by the Nutrition Labeling and Education Act, which bars States from adopting "any requirement for the labeling of food," such as dietary supplements, "not identical to the requirements" specifically identified therein. 21 U.S.C. § 343-1; *compare* Def.'s Mot. to Dismiss at 13-14, ECF No. 50 (previously arguing that Plaintiffs' claims are expressly preempted by 21 C.F.R. § 101.9, which is given preemptive effect by 21 U.S.C. § 343-1). Accordingly, at this stage in the litigation, whether Plaintiffs assert parallel state-law claims consistent with the NLEA, including the federal statutory prohibition on false or misleading labeling in any particular, is not in issue.[11]

The only preemption issue Defendant raises in its motion to dismiss is whether 21 U.S.C. § 337(a), which recognizes that FDCA requirements are not privately enforceable, preclude a suit under state law to enforce parallel state requirements authorized by Section 343-1? Every court of which Plaintiffs are aware has answered that question in the negative, and the FDA agrees that there is no preemption, based on § 337, of parallel state-law claims.[12] That is for

---

[11] Because Defendant nowhere argues that Plaintiffs' suit does not enforce parallel state requirements authorized by Section 343-1, and because Defendant cannot raise new arguments in reply, the point is conceded at this stage. *See United States v. Martin*, 454 F. Supp. 2d 278, 281 n.3 (E.D. Pa. 2006) (reply brief "is intended only to provide an opportunity to respond to the arguments raised in the response brief.").

[12] In addition to state-law claims, Plaintiffs assert a claim under the federal MMWA. Defendant's preemption arguments supply no basis to dismiss this federal claim. Whether a cause of action under the MMWA is precluded by the provisions of the FDCA is a distinct question from preemption and is nowhere raised in Defendant's motion to dismiss. *See Pom Wonderful LLC v. Coca-Cola Co.*, 134 S. Ct. 2228, 2236 (2014) (potential conflict between two federal laws raises issues of preclusion, not preemption).

good reason. Nothing in Section 337's text remotely suggests that it bars actions under state law. Section 337(a) provides that "proceedings for the enforcement, or to restrain violations, of [the FDCA] shall be by and in the name of the United States." 21 U.S.C. § 337(a). Section 337(b), in turn, authorizes States to file actions to enforce certain FDCA provisions, provided the States satisfy procedural requirements ensuring coordination with the FDA. *See* 21 U.S.C. § 337(b). The FDA recognized, in promulgating regulations to implement Section 337(b), that Section 337 "applies only to proceedings to enforce the [FDCA]" but "does not prohibit a State from enforcing identical State law." State Enforcement Provisions of the Nutrition Labeling and Education Act of 1990, 58 Fed. Reg. 2457-01, 2458 (Jan. 6, 1993).

Section 337 does not prohibit a State from allowing *private* suits to enforce *parallel* state requirements. *See, e.g.*, *Turek v. Gen. Mills, Inc.*, 662 F.3d 423, 426 (7th Cir. 2011); *Brazil v. Dole Food Co.*, 935 F. Supp. 2d 947, 957 (N.D. Cal. 2013) ("Congress did not intend to preclude private enforcement actions of state laws that mirror the FDCA.") (citations omitted); *In re Farm Raised Salmon Cases*, 175 P.3d 1170, 1179 (Cal. 2008), *cert. denied sub. nom. Albertson's, Inc. v. Kanter*, 555 U.S. 1097 (2009) (claims predicated on California's Sherman Law not preempted by FDCA because Sherman Law contains requirements identical to FDCA). Congress, in enacting the Nutrition Labeling and Education Act, expressed an intention to permit States to adopt parallel food-labeling requirements, and nothing in Section 337 preempts or otherwise limits suits by States to enforce parallel state law. *See Farm Raised Salmon*, 175 P.3d at 1179.

Given that Section 337(b)'s limitations on a State's direct enforcement of the FDCA do not preempt or limit a State's enforcement of parallel state requirements, neither can Section 337(a)'s restrictions on private enforcement of the FDCA plausibly bar a State from allowing private suits based on parallel state requirements. The California Supreme Court explained this point at length in *In re Farm Raised Salmon Cases*; it found "no persuasive rationale to explain why private claims based on these same state laws would be of any greater concern to Congress than California's enforcement of state laws—in both instances, state laws identical to the FDCA are enforced without first notifying the FDA." *Id.*, 175 P.3d at 1184.

On petition for certiorari in the U.S. Supreme Court, the Solicitor General, speaking for the FDA, explained that the agency believed that the California Supreme Court's reading of § 337(a) was correct. *See* Brief for the United States as Amicus Curiae, 2008 WL 5151069, at *8 (hereinafter "SG Br."), *Albertson's, Inc. v. Kanter*, 555 U.S. 1097 (2009) ("Although 21 U.S.C. 337 precludes private actions to enforce the FDCA itself, Section 337 does not prohibit private actions to enforce parallel state requirements."); *id*. at *12 ("Nothing in the text of Section 337 suggests that it precludes actions under state law."). As the Solicitor General explained, an action such as Plaintiffs' to enforce state laws that impose requirements which parallel FDCA requirements is fundamentally a state-law action, not an action to enforce the FDCA. *See id*. at *12-13. Insofar as the SAC addresses federal law, it does so simply to acknowledge that Plaintiffs' claims parallel federal requirements. *See id*.

In this case, Plaintiffs' unfair-competition claim based on violations of California's Sherman Law—in part, that the dietary supplement labeling at issue falsely or misleadingly asserts that picamilon, BMPEA, and *acacia rigidula* are dietary ingredients, *see* Cal. Health & Safety Code § 110660—mirrors the FDCA's requirement that labeling may not be false or misleading in any particular. *See* 21 U.S.C. § 343(a)(1). Even though the state-law claim mirrors the federal claim, Plaintiffs may prove a violation of California's Sherman Law "without even referring to the FDCA." *See* SG Br. at *13.

Of course, Plaintiffs can also prove a violation of California's Sherman Law by proving a violation of the FDCA. *See* Cal. Health & Safety Code § 110100(a) ("All food labeling regulations and any amendments to those regulations … shall be the food labeling regulations of this state"); accord SG Br. at *13. Indeed, the Complaint asserts that Defendant violated federal law in addition to state law. *See, e.g.*, ¶5 (alleging Defendant's actions are "in violation of state and federal law"). But that does not transform Plaintiffs' state-law claims into federal claims. As the Supreme Court explained in *Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996), state-law claims predicated on violations of the FDCA nonetheless remain *state-law* claims. In fact, in *Lohr* the Supreme Court held that the FDCA did not preempt state-law claims which included

allegations that the defendant had "violated FDA regulations." *Id.* at 495. Subsequently, in *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341 (2001), the Court explicitly rejected an "attempt to characterize . . . the claims at issue in [*Lohr*] . . . as 'claims arising from violation of FDCA requirements.'" *Id.* at 352. This was a mischaracterization, the Court in *Buckman* explained, because the claims in *Lohr* arose from a state-law duty, "not solely from the violations of FDCA requirements." *Id*; s*ee generally* SG Br. at *13-15.

Notably, Plaintiffs' state-law claims do not simply require proof of a state-law violation that parallels the FDCA. Plaintiffs must also establish additional elements, such as damage or injury resulting from the violation. *See*, *e.g.*, Cal. Bus. & Prof. Code § 17204 (requiring proof of injury-in-fact and loss of money or property as a result of unfair competition); *Dougherty v. Bank of Am., N.A.*, No. 2:15-CV-01226-TLN-CKD, 2016 WL 1337536, at *8 (E.D. Cal. Apr. 5, 2016) (negligent misrepresentation requires proof of justifiable reliance and resulting damages). That Plaintiffs must establish these additional elements further shows that they are not seeking to enforce the FDCA but rather parallel state-law duties not preempted by the FDCA. *See Lohr*, 518 U.S. at 495 (state-law claims are not "different from" federal requirements for preemption purposes simply because plaintiffs must prove additional elements to prevail under state law).

Citing two district court decisions, *Riley v. Cordis Corp.*, 625 F. Supp. 2d 769, 777 (D. Minn. 2009), and *In re Bayer*, 701 F. Supp. 2d at 369, Defendant suggests that § 337(a) preempts Plaintiffs' claims. *See* Mot. at 17-18. Defendant misreads these decisions. *Riley* simply observed that "*Riegel* and *Buckman* create a narrow gap through which a plaintiff's state-law claim must fit if it is to escape express or implied preemption." 625 F. Supp. 2d at 777. *In re Bayer* made the same observation. *See id.*, 701 F. Supp. 2d at 369 (citing *Riley*). The Seventh Circuit in *Bausch* cited the statement from *Riley* quoted by Defendant, explaining that "[r]egardless of how wide or narrow the gap," *Buckman* and *Lohr* plainly establish that state-law claims which parallel federal claims are neither expressly nor impliedly preempted by the FDCA. 630 F.3d at 557-58. Thus, contrary to Defendant's submission, nothing in *Riley* or *In re Bayer* suggests that a parallel state-law claim is nonetheless preempted by § 337(a).

Defendant seems to argue that Plaintiffs' state-law claims are impliedly preempted under *Buckman*. *See* Mot. at 17 (citing *Riley*, 625 F. Supp. 2d at 777, which cites *Buckman*). But *Buckman* held only that a "fraud-on-the-FDA" claim against a regulatory consultant who had no dealings with plaintiffs but had helped a manufacturer obtain FDA approval for a medical device was preempted because it interfered with FDA's discretion about whether and how to exercise its enforcement authority. 531 U.S. at 350-53. Here, Plaintiffs are not suing for fraud on the FDA, but for Defendant's false and misleading representations or omissions which injured *them*. Nor are they suing to enforce the FDCA, but instead bring longstanding state-law causes of action for deception in food labeling. Defendant's preemption defense "injects FDCA compliance questions into the case, but that does not make this a backdoor private enforcement action."[13] *See* Br. for U.S. as Amicus Curiae, 2014 WL 827980, at *28, *POM Wonderful*, 134 S. Ct. 2228.

Lastly, Defendant is wrong to suggest that Plaintiffs cannot bring this state-law suit unless and until the FDA determines that Defendant violated the FDCA. *See* Mot. at 18-19. First, the FDA's not initiating an enforcement action cannot be construed as implicit approval. *See Altria Grp., Inc. v. Good*, 555 U.S. 70, 89-90 (2008) ("agency nonenforcement of a federal statute is not the same as a policy of approval") (citing *Sprietsma v. Mercury Marine*, 537 U.S. 51 (2002)). The FDA, for its part, does not have a process for approving particular dietary supplement labeling, and it does not accept formal petitions to take discretionary enforcement action, *see* 21 C.F.R. § 10.30(k), and its decision whether to initiate an enforcement action would not be subject to judicial review. *See Heckler v. Chaney*, 470 U.S. 821, 837-38 (1985).

Defendant nevertheless takes issue with Plaintiffs' reference to FDA warning letters because they are not final agency action. But it is commonplace to refer to FDA warning letters in pleadings to support Plaintiffs' factual allegations. References to FDA warning letters neither alter the state-law character of Plaintiffs' claims nor are objectionable given the warning letters

---

[13] And here, unlike in *Buckman*, 531 U.S. at 350-51, Plaintiffs' suit does not concern the FDA's approval of a product or any other FDA determination. In fact, as previously discussed, the FDA does not even pre-approve dietary supplement labeling. Therefore, any concern expressed in *Buckman* about skewing the FDA's medical device approval process is not presented by this state-law suit concerning dietary supplements.

relate to Plaintiffs' state-law injuries. *See Cline v. Advanced Neuromodulation Sys., Inc.*, 921 F. Supp. 2d 1374, 1381 (N.D. Ga. 2012) (plaintiff used warning letter to "allege[ ] specific facts about when and how these violations occurred in the manufacture of the specific device at issue"); *see also Gelber v. Stryker Corp.*, 788 F. Supp. 2d 145, 156 (S.D.N.Y. 2011) (warning letter used to support allegations that medical device "was adulterated because some of the components . . . contained excess levels of manufacturing residue").

Second, Congress' decision *not* to preempt parallel state-law claims, *see* 21 U.S.C. § 343-1, reflects its considered judgment that state regulation of food and dietary supplement labeling is a complementary form of regulation which offers "an additional, and important, layer of consumer protection." *See Wyeth v. Levine*, 555 U.S. 555, 579 (2009) (rejecting FDCA preemption of failure-to-warn suits against prescription drug manufacturers); *Bates v. Dow Agrosciences L.L.C.*, 544 U.S. 431, 451 (2005) ("Private remedies that enforce federal misbranding requirements would seem to aid, rather than hinder, the functioning of FIFRA."). Parallel state-law actions, therefore, do not depend on FDA's enforcement of FDCA requirements. *See ThermoLife Int'l, LLC v. Gaspari Nutrition Inc.,* No. 14-15180, 2016 WL 1460171, at *1 (9th Cir. Apr. 14, 2016) (rejecting argument that plaintiff must demonstrate FDA itself found an underlying FDCA violation to prevail on claim that supplement distributor falsely advertised its products as "legal" or "DSHEA-compliant").

For all these reasons, Section 337 does not preempt Plaintiffs' suit under state law to enforce parallel state requirements authorized by Section 343-1.

### C.     Neither Final Agency Action Nor Due Process Issues Preclude Plaintiffs' Suit

#### 1.     FDA's Enforcement of the FDCA is not Required for Plaintiffs to Bring Parallel State Claims Seeking Relief for Consumer Harm

Defendant contends that final enforcement action by the FDA is required before Plaintiffs can bring this suit, and that Plaintiffs cannot establish final agency action through the Welch Declaration or warning letters. *See* Mot. at 19-22. These arguments misstate the law and Plaintiffs' position. As already discussed, Plaintiffs need not wait for final agency action to

bring a claim seeking relief for consumer harm.  *See supra* section IV.B.2.  And because final

agency action is not required, Defendant's lengthy discussion of how the Welch Declaration and

the warning letters do not qualify as final agency action is entirely beside the point.[14]

As with its preemption arguments, Defendant's request for dismissal pending final FDA

action mischaracterizes Plaintiffs' suit.  Plaintiffs' parallel state-law suit for consumer deception

concerns whether Defendant's "statements [in labeling and advertising] are false and misleading

to relevant consumers[.]"  *Mut. Pharm. Co. v. Watson Pharm., Inc.*, No. CIV.A. 09-5421 (GEB),

2010 WL 446132, at *5 (D.N.J. Feb. 8, 2010).  This "is not a matter reserved for the FDA, but a

matter that falls within the jurisdiction of th[e] Court."  *Id.*; *see also In re Bayer*, 701 F. Supp. 2d

at 370-71 (noting "FDCA and the state law consumer protection statutes serve complementary,

though somewhat overlapping, roles").  Critically, even the *FDA* takes the position that:

> courts . . . are capable of interpreting the FDCA and FDA's food-labeling regulations,
> with appropriate deference to FDA's interpretation.  *Indeed, that is a task courts must
> perform to determine whether a state-law claim is expressly preempted or to adjudicate
> an "identical" state-law claim.  See* 21 U.S.C. 343-1(a); 21 C.F.R. 100.1(c)(4); *cf. Bates
> v. Dow Agrosciences LLC*, 544 U.S. 431, 453 (2005) (remanding to determine whether
> state-law labeling requirements were "equivalent" to federal statutory and regulatory
> misbranding standards under the Federal Insecticide, Fungicide, and Rodenticide Act
> (FIFRA), 7 U.S.C. 136 et seq.).

Br. for U.S. as *Amicus Curiae* in *POM Wonderful*, 2014 WL 827980, at *27 (emphasis added);

*id.* at *27 n.11 ( "To the extent FDA disagrees with a court's interpretation of an ambiguous

FDCA provision or regulation, the agency can exercise its interpretive discretion through

subsequent rulemaking or guidance.").[15]  There is therefore no basis to dismiss this suit pending

final FDA enforcement of the FDCA.

---

[14] As with preemption, Defendant does not separately address Plaintiffs' MMWA claim, ¶¶ 97-109, in the course of requesting dismissal until there is final agency action.  There is no basis to dismiss this federal claim, for the same reasons there is no basis to dismiss Plaintiffs' state-law claims:  final agency action is not necessary.  *See ThermoLife Int'l., LLC*, 2016 WL 1460171, at *1 (finding it is not necessary for the FDA itself to find a violation of FDCA in order to prevail on Lanham Act and state unfair competition claims).

[15] *See also id.* at *27-28 (noting the FDA's position that courts should not await agency determinations before proceeding with parallel claims because (1) there is no process to apply to the agency for discretionary review of food labeling, (2) agency action does not provide redress, and (3) court adjudication of such claims "tend to *reinforce*, not undo, the statutory and regulatory requirements") (emphasis in original).

Defendant is unable to cite any authority requiring final agency action before a private plaintiff may bring suit against a private defendant for misrepresentations under state law, including consumer protection statutes. On the contrary, Defendant's cited cases nearly all involve suits brought to prevent or challenge agency actions.[16] The sole exception is *Ballentine v. United States*, 486 F.3d 806 (3d Cir. 2007), a voter's suit against the United States, which does not even involve an administrative agency and is inapposite.

Here it would be especially inappropriate to require final FDA action before Plaintiffs may proceed with their consumer suit. Defendant's own internal analysis demonstrates that it was aware since at least 2007 that picamilon is a "new dietary ingredient." *See* ¶¶47-48. Despite this knowledge, Defendant failed to invoke the pre-market notification process, which requires manufacturers and distributors who wish to market or sell supplements with "new dietary ingredients" to notify the FDA. 21 U.S.C. § 350b(a). The failure to satisfy the notification requirements means that any product with a new dietary ingredient is adulterated *as a matter of law*. *See id*. Having utterly failed to notify the FDA when it had the obligation to do so, Defendant's request that the Court dismiss this suit in the absence of final FDA action is not offered out of respect for the FDCA. It is a litigation tactic. Worse, it is a completely unsound request, for the law neither requires final agency action before Plaintiffs may bring their parallel state-law claims seeking redress for consumer harm, *see ThermoLife Int'l*, 2016 WL 1460171, at *1; *Mut. Pharm. Co.*, 2010 WL 446132, at *5, nor does federal law even provide a mechanism to formally petition for discretionary enforcement. *See supra* n. 13 (citing 21 C.F.R. § 10.30(k) and

---

[16] *See Bennett v. Spear*, 520 U.S. 154 (1997) (irrigation district sued Interior Dept. officials); *American Tel. & Tel. Co. v. E.E.O.C.*, 270 F.3d 973 (D.C. Cir. 2001) (employer's declaratory judgment against EEOC); *Biotics Research Corp. v. Heckler*, 710 F.2d 1375 (9th Cir. 1983) (drug manufacturers' injunctive and declaratory judgment action against FDA enforcement); *Cody Labs., Inc. v. Sebelius*, 446 F. App'x 964 (10th Cir. 2011) (drug manufacturer's declaratory judgment action against FDA officials); *Trudeau v. Federal Trade Comm'n*, 456 F.3d 178 (D.C. Cir. 2006) (infomercial producer's injunctive and declaratory judgment suit against FTC challenging press release); *Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726 (D.C. Cir. 2003) (sprinkler manufacturer's declaratory judgment action against CPSC); *Holistic Candlers and Consumers Ass'n. v. FDA*, 664 F.3d 940 (D.C. Cir. 2012) (candle manufacturers' injunctive action against FDA); *accord Dietary Supplement Coalition Inc. v. Sullivan*, 978 F.2d 560 (9th Cir. 1992) (dietary supplement manufacturers' declaratory judgment action against FDA).

*Heckler*, 470 U.S. at 837-38); *see also Reiter v. Cooper*, 507 U.S. 258, 268 n.3 (1993) (primary jurisdiction presupposes the parties may "apply to the [agency] for a ruling").

### 2.      This Lawsuit Does Not Deprive Defendant of Due Process

Defendant contends that Plaintiffs' suit deprives Defendant of its due-process rights because, given that there was no final FDA action, Defendant was deprived of its right to challenge such action. *See* Mot. at 22-23. As discussed above, however, final agency action is not required to bring a state consumer protection claim. Plaintiffs offer these materials as evidence in support of their consumer-protection claims, evidence that Defendant will have an opportunity to rebut in this litigation. Accordingly, Defendant is not being denied due process.

### D.      The "FDA Guarantee" Is Inapplicable To Plaintiffs' Claims

Defendant asserts, without citation to a single case, that Section 303(c) of the FDCA immunizes it from any sort of civil liability. *See* Mot. at 23-24. But the defense is inapplicable as a matter of law because the statutory provisions Defendant relies upon only exempt innocent retailers from *criminal prosecution* under the FDCA and do not relieve the recipient of such a "guarantee" of civil liability or other consequences of selling misbranded food. Defendant fails to cite a single authority supporting its novel construction of the law, and the provision of the FDCA upon which it is based shows that "prosecution" is intended to have its ordinary meaning of criminal prosecution. The statute at issue, 21 U.S.C. § 333, has been in effect in one form or another for over 50 years, and at no point has it ever been relied upon by any court as a basis for dismissing civil claims, nor has any published treatise or journal suggested such an effect.

The FDCA provides under the heading "[e]xceptions in certain cases of good faith, etc.," that "[n]o person shall be subject to the penalties of subsection (a)(1) of this section" for having received in good faith misbranded products if he can produce the required guaranty or undertaking. 21 U.S.C. § 333(c). The "penalties of subsection (a)(1)" are *criminal* penalties of imprisonment of not more than a year, a fine of not more than $1,000, or both. *See* 21 U.S.C. § 333(a)(1). The language of the statute could not be any plainer: Section 333 applies to *criminal* penalties only. Defendant concedes this, arguing merely that the "FDA Guarantee provides

GNC with immunity from *misdemeanor prosecution* under the FDC act." Mot. at 22 (emphasis added). Defendant does not point to any language in the statute itself that supports any form of "civil immunity," and does not even try to analogize this statute with any similar statutes. In short, Defendant offers absolutely no support for its radical argument.[17]

**E.    Plaintiffs State An Implied Warranty Claim Under The MMWA**

Defendant seeks dismissal of Plaintiffs' implied-warranty claim under the MMWA based on the statutory exclusion of "any written warranty the making or content of which is otherwise governed by Federal law." 15 U.S.C. § 2311(d). The glaring hole in Defendant's argument is that it nowhere attempts to address how this exclusion would apply to an implied warranty claim (which by definition is a non-written warranty). Indeed, the statutory language alone shows the fatal error in the argument as it specifically states "written warranty."

Defendant's own argument and cited authority further highlights that this argument fails. First, Defendant never attempts to establish why the implied warranty should be construed here as a written warranty covered by the statute. Instead, Defendant contends that since the claim rests on the implied warranty of fitness for ordinary purpose, it is in fact a written warranty. Adopting this position would not only eliminate implied warranty claims as they have long been recognized by the courts, but would also directly conflict with the statutory structure of the MMWA. Congress could have easily omitted the limiting "written warranty" language and referred instead to "any warranty." However, Congress chose to differentiate between "written warranty" and "implied warranty" throughout the statute as it defines each:

(6) The term "written warranty" means--

---

[17] Additionally, even if Section 333(c) did provide some degree of civil protection, Defendant does not, and cannot, establish at this stage of the proceedings that it would be entitled to such protection. Defendant simply represents to the Court that it "*can* establish that its third-party vendor agreements provide that the vendors warranted that the goods were manufactured, packaged, stored and shipped in accordance with the applicable standards promulgated under [all applicable laws]." Mot. at 23 (emphasis added). Promising the Court that it "can" establish this is utterly insufficient on a motion to dismiss and, at this point, Defendant has not proffered *any* of its agreements, much less all of them. It is not uncommon in the industry for a company such as Defendant to assume some authority over packaging, labeling and branding of the products supplied by third parties, and Plaintiffs have alleged just that. *See* ¶¶79-87. It is highly likely that discovery will reveal that Defendant is anything but an "innocent retailer," but at this stage of the litigation Defendant has provided no legal or factual rationale for why the "FDA Guarantee" should operate to bar any of Plaintiffs' claims.

(A) any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time, or

(B) any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking, which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of such product.

(7) The term "implied warranty" means an implied warranty arising under State law (as modified by sections 2308 and 2304(a) of this title) in connection with the sale by a supplier of a consumer product.

15 U.S.C. § 2301; *see also Forcellati v. Hyland's, Inc.*, No. CV 12-1983-GHK (MRWx), 2015 WL 9685557, at *6 (C.D. Cal. Jan. 12, 2015) ("The MMWA has a narrow definition of 'written warranty.'"). Thus, this Court should reject Defendant's attempt to skirt the clear distinction of the two provisions. In the end, no case cited by Defendant, nor any argument it makes, justifies this Court construing the implied-warranty claim as a warranty barred under the MMWA.[18]

## F. Plaintiffs Did Not Allege Liability Under The FDCA For Failure To Submit Premarket Notification

However, Plaintiffs never alleged liability under the FDCA for failure to submit Premarket Notification as Defendant claims. Instead, Plaintiffs have asserted various state and federal *misrepresentation* violations against Defendant. Therefore it is irrelevant whether Defendant is subject to the Premarket Notification requirement as a manufacturer or distributor.

---

[18] Defendant's cited cases are distinguishable. *See Jasper v. Musclepharm Corp.*, No. 14-CV-02881-CMA-MJW, 2015 WL 2375945, *5-6 (D. Colo. May 15, 2015) (adopting report and recommendation) (holding MMWA not applicable because claims attacked written warranties in the form of false and misleading claims on product labels); *Bates v. Gen. Nutrition Ctrs., Inc.*, 897 F. Supp. 2d 1000, 1002 (C.D. Cal. 2012) (dismissing MMWA claim which asserted that defendants "breached their written warranties" by making claims about dietary supplement's ingredients); *Stewart v. Smart Balance, Inc.*, No. CIV.A. 11-6174 (JLL), 2012 WL 4168584, at *12-13 (D.N.J. June 26, 2012) (MMWA claim dismissed because plaintiffs "fail[ed] to establish that the statement 'fat free' constituted a 'written warranty' within the meaning of the MMWA"); *Hairston v. S. Beach Beverage Co.*, No. CV 12-1429-JFW (DTBx), 2012 WL 1893818, at *5-6 (C.D. Cal. May 18, 2012) (dismissing MMWA claim because statute was inapplicable to the "written warranty" at issue, and even if MMWA could apply to particular written warranty, plaintiff failed to show product's label constituted such a warranty); *Kanter v. Warner-Lambert Co.*, 99 Cal. App. 4th 780, 798 (2002) (holding that court's conclusion that the plaintiffs' *express warranty* claims under state law were preempted by federal law was "fatal to any *express warranty* claim under Magnuson-Moss.") (emphasis added). As none of these decisions involved implied warranties, much less found that implied warranties should be construed as written warranties, they are inapposite.

Defendant does not dispute these factual allegations and provides no analysis for why it is not liable for the misrepresentations it was aware of. In fact, Defendant had known for some time that picamilon, BMPEA, and *acacia rigidula* were not food, were not intended to supplement the diet, and could not truthfully or lawfully represent a dietary supplement or ingredient in product packaging or labeling. *See* ¶¶3, 45-48, 54, 61, 65-66, 68-71. This is evidenced by the undisputed fact that Defendant reviews scientific literature on the ingredients used in its third-party products to independently verify claims made by third-parties. *See* ¶83. Based on Defendant's independent research, Defendant was well aware the ingredients were not dietary ingredients. Ms. Jakel noted in her 2007 analysis that she could not find a new dietary ingredient notification: "No NDI that I could find." And in April 2014, Ms. Jakel again looked for an NDI and documented: "still no NDI found." *See* ¶¶47-48.

Despite this knowledge and awareness that the Products contained new dietary ingredients requiring Premarket Notification and knowledge that the requirement was not satisfied, Defendant nevertheless sold the Products and misrepresented that Products containing picamilon, BMPEA, or *acacia rigidula* contained lawful dietary ingredients. As such, Defendant misrepresented that these Products were lawful dietary supplements that were legal to sell as such even though Defendant knew it was illegal to do so. *See* 21 U.S.C. §§ 331(a), 350(b). It cannot escape liability simply by arguing that the FDCA imposes obligations only on the manufacturers or distributors.[19] Plaintiffs' case is not about whether Defendant violated the FDCA, but instead seeks redress for Defendant's sale of Products that Defendant knew, or should have known, were in violation of the various state and federal regulations.

## V.   CONCLUSION

For the reasons above, Defendant's Motion to Dismiss should be denied in its entirety.[20]

---

[19] This is highlighted by Defendant's own (improperly) cited materials. *See* Alderfer Decl., Ex. N at 3 ("[r]egardless of whether you are required to submit a premarket notification, you are responsible for evaluating the safety of dietary ingredients you use, and you must ensure that dietary supplements you sell or distribute are not adulterated.").

[20] In the event the Court ultimately dismisses the SAC, or any claim therein, Plaintiffs reserve their right to seek to amend the SAC pursuant to Fed. R. Civ. P. 15.

Dated: November 14, 2017

Respectfully submitted,

/s/ Shanon J. Carson
Shanon J. Carson, Esquire (Pa. ID No. 85957)
Arthur Stock, Esquire (Pa. ID No. 64336)
**Berger & Montague, P.C.**
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-4656
Facsimile: (215) 875-4604
scarson@bm.net
astock@bm.net

Gary E. Mason, Esquire
Jennifer S. Goldstein, Esquire
**Whitfield Bryson & Mason, LLP**
5101 Wisconsin Ave., NW, Ste 305
Washington, DC 20036
Telephone: (202) 429-2290
Facsimile: (202) 429-2294
gmason@wbmllp.com
jgoldstein@wbmllp.com

*Co-Lead Counsel*

On the brief:

D. Aaron Rihn, Esquire
**Robert Peirce & Associates, P.C.**
707 Grant Street
Suite 2500
Pittsburgh, PA 15219-1918
Telephone: (412) 281-7229
Facsimile: (412) 281-4229
arihn@peircelaw.com

Gregory F. Coleman, Esquire
Mark E. Silvey, Esquire
Lisa A. White, Esquire
**Greg Coleman Law, P.C.**
First Tennessee Plaza
800 S. Gay Street
Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0090
Facsimile: (865) 522-0049
greg@gregcoleman.law
mark@gregcolemanlaw.com
lisa@gregcolemanlaw.com

John Yanchunis, Esquire
Marcio Valladares, Esquire
Patrick A. Barthle II, Esquire
Rachel L. Soffin, Esquire
**Morgan & Morgan**
**Complex Litigation Group**
201 North Franklin Street
7th Floor
Tampa, Florida 33602
Telephone: (813) 223-5505
Facsimile: (813) 223-5402
jyanchunis@forthepeople.com
mvalladares@forthepeople.com
pbarthle@forthepeople.com
rsoffin@forthepeople.com

Janine Pollack, Esquire
Michael Liskow, Esquire
**Wolf Haldenstein Adler Freeman & Herz LLP**
70 Madison Avenue
New York, New York 10016
Telephone: (212) 545-4600
Facsimile: (212) 545-4653
pollack@whafh.com
liskow@whafh.com

Theodore B. Bell, Esquire
Carl Malmstrom, Esquire
**Wolf Haldenstein Adler Freeman & Herz LLP**
One South Dearborn St.
Suite 2122
Chicago, IL 60603
Telephone: (312) 984-0000
Facsimile: (312) 212-4401
tbell@whafh.com
malmstrom@whafh.com

Robert K. Shelquist, Esquire
Craig S. Davis, Esquire
Rebecca A. Peterson, Esquire
**Lockridge Grindal Nauen P.L.L.P.**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
rkshelquist@locklaw.com
cdavis@locklaw.com
rapeterson@locklaw.com

Eric H. Gibbs, Esquire
Andre M. Mura, Esquire
Caroline Corbitt, Esquire
**Girard Gibbs LLP**
601 California Street, 14th Floor
San Francisco, CA 94108
Phone: (415) 981-4800
Facsimile: (415) 981-4846
ehg@girardgibbs.com
amm@girardgibbs.com
ccc@girardgibbs.com

*Attorneys for Plaintiffs*

796163

28

| | | |
|---|---|---|
| DANIEL HUBERT, individually and on behalf of all others similarly situated, | : | Civil Action No. 2:15-cv-01391-MRH |
| | : | |
| Plaintiff, | : | |
| | : | Oral Argument Requested |
| v. | : | |
| | : | This Document Relates |
| GENERAL NUTRITION CORPORATION, | : | To All Actions |
| | : | |
| Defendant. | : | |
| | : | |
| (In re: GNC Picamilon/BMPEA Litigation) | : | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been electronically filed with the Clerk of the Court by using the CM/ECF system, which will send notice of electronic filing to the CM/ECF participants on this 14th day of November 2017.

By:     /s/ Shanon J. Carson
        Shanon J. Carson
        Pa. I.D. No. 85957
        Berger & Montague, P.C.
        1622 Locust Street
        Philadelphia, PA 19103