## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANIEL HUBERT, individually and on behalf of all others similarly situated, | : : : | Civil Action No. 2:15-cv-01391-MRH |
| Plaintiff, | : : | |
| v. | : : | Oral Argument Requested |
| GENERAL NUTRITION CORPORATION, | : : | This Document Relates to: All Actions |
| Defendant. | : : : | |
| (In re: GNC Picamilon/BMPEA Litigation) | : | |

## DEFENDANT GENERAL NUTRITION CORPORATION'S REPLY IN SUPPORT
## OF MOTION TO DISMISS SECOND AMENDED CONSOLIDATED COMPLAINT

Defendant General Nutrition Corporation ("GNC"), by and through its attorneys Paul K. Leary, Jr., Esquire, Amy B. Alderfer, Esquire, and Brett N. Taylor, Esquire, and the law firm Cozen O'Connor, file the following Reply in Support of GNC's Motion to Dismiss Plaintiffs' Second Amended Consolidated Class Action Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6), for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.

# TABLE OF CONTENTS

Page

I.    INTRODUCTION .................................................................................................. 1

II.    AFTER THREE TRIES, PLAINTIFFS' CLAIMS SHOULD BE DISMISSED.................. 2

    A.  Plaintiffs Lack Standing to Pursue Their Claims............................................ 2

    B.  Plaintiffs' Magnuson-Moss Warranty Act claim is based on allegations of an alleged written warranty, and thus this claim fails because it is subject to the Regulatory Scheme of the FDCA. ................................................................................... 8

    C.  The applicability of a federal-preemption defense is established from allegations in the Complaint itself............................................................................................ 8

    D.  Plaintiffs' Fail to Plead Parallel Claims and their Claims are Therefore Preempted....... 9

    E.  Plaintiffs' Claims are Impliedly Preempted and They May Not Enforce the FDCA. ... 11

    F.  Final Agency Action is Needed, Otherwise, GNC's Due Process Rights Are Violated. ................................................................................................ 12

III.   CONCLUSION................................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Altria Grp., Inc. v. Good*,
555 U.S. 70 (2008) ...............................................................................................12

*Bowman v. Ram Medical, Inc.*,
Case No. 10-cv-4403(DMC)(MF), 2012 U.S. Dist. LEXIS 75218 (D.N.J. May
31, 2012) ......................................................................................................... 4, 5

*Buckman Co. v. Plaintiffs' Legal Comm.*,
531 U.S. 341 (2001) ................................................................................. 6, 11, 12

*Caplinger v. Medtronic, Inc.*,
921 F. Supp. 2d 1206 (W.D. Okla. 2013) ................................................................9

*Caudill Seed & Warehouse Co., Inc. v. Jarrow Formulas, Inc.*,
No. 3:13-CV-00082-CRS, 2015 WL 10943828 (W.D. Ky. Oct. 29, 2015) ...........11

*In re: Cheerios Mktg. & Sales Practices Litig.*,
2012 U.S. Dist. LEXIS 128325 (D.N.J. Sept. 10, 2012) ..........................................6

*Estrada v. Johnson & Johnson*,
Civil Action No. 16-7492, 2017 WL 2999026 (D.N.J. July 14, 2017)................. 6, 7

*Gross v. Stryker Corp.*,
858 F. Supp. 2d 466 (W.D. Pa. 2012) ..................................................................10

*James v. Johnson & Johnson Consumer Cos., Inc.*,
Civil No. 10-cv-03049, 2011 WL 198026 (D.N.J. Jan. 20, 2011)....................... 3, 4

*Jones v. Bock*,
549 U.S. 199 (2007).................................................................................................8

*Koronthaly v. L'Oreal USA, Inc.*,
374 F. App'x 257 (3d Cir. 2010) .............................................................................5

*Maya v. Centex Corp.*,
658 F.3d 1060 (9th Cir. 2011) .................................................................................4

*McLaughlin v. Bayer Corp.*,
No. CV 14-7315, 2016 WL 1161578 (E.D. Pa. Mar. 22, 2016).............................9

*McMullen v. Medtronic, Inc.*,
421 F.3d 482 (7th Cir. 2005) ..................................................................................9

*Medley v. Johnson & Johnson Consumer Cos., Inc.*,
    Civil No. 10-cv-02291, 2011 WL 159674 (D.N.J. Jan. 18, 2011)....................................3, 4, 5

*In re Medtronic, Inc., Sprint Fidelis Leads Prods. Liab. Litig.*,
    623 F.3d 1200 (8th Cir.2010) ...................................................9

*In re Medtronic, Inc., Sprint Fidelis Leads Product Liability Litigation
(Medtronic Leads I)*,
    592 F. Supp. 2d 1147 (D. Minn. 2009), *aff'd, Medtronic Leads II*, 623 F.3d
    1200..............................................................................10

*Riegel v. Medtronic, Inc.*,
    552 U.S. 312 (2008) .............................................................9

*Riley v. Cordis Corp.*,
    625 F. Supp. 2d 769 (D. Minn. 2009) ......................................9

*Sandoz Pharm. Corp. v. Richardson–Vicks, Inc.*,
    902 F.2d 222 (2d Cir.1990)...................................................10

*Smajlaj v. Campbell Soup Co.*,
    782 F. Supp. 2d 84, 99 (D.N.J. 2011) ...................................6

*White v. Stryker*,
    818 F. Supp. 2d 1032 (W.D. KY. 2011) .................................9

*Wolicki-Gables v. Arrow Int'l, Inc.*,
    634 F.3d 1296 (11th Cir. 2011) .........................................9, 10

**Statutes**

15 U.S.C. § 2311(d) .....................................................................2

21 U.S.C. § 337(a) ...................................................................11, 12

FDCA............................................................................. *passim*

Magnuson-Moss Warranty Act..........................................................8

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs' Second Amended Consolidated Complaint ("SAC") still fails to remedy the issues set forth in its First Amended Complaint and the deficiency concerns raised by the Court's September 8, 2017 Order.

The allegations in the SAC still fail to allege facts that support that Plaintiffs have standing to bring this action. Plaintiffs claim in their Opposition that they have standing because they have now alleged an "economic injury": i.e. that Plaintiffs were injured because the Products claim to be Dietary Supplements that contain Dietary Ingredients when they allegedly do not and that Plaintiffs would not have bought the Products and/or would have paid less for the Products at the time of purchase had they known this. However, even accepting this allegation as true, economic damages do not follow as a consequence. The reason is that the Plaintiffs received the benefit-of-the-bargain. The allegations in Plaintiffs' SAC establish that they knew they were purchasing products containing either picamilon, BMPEA, or *acacia rigidula*. (SAC ¶ 23.) And not only did they purchase the Products once, they purchased them on multiple occasions. (SAC ¶¶ 11-22.) Moreover, there is no allegation that the Products purchased did not serve its purpose for which they were intend. As such, Plaintiffs received the benefit-of-the-bargain and cannot establish an economic injury flowing from the allegations.

Moreover, Plaintiffs' claims fail because they presume that the ingredients at issue (BMPEA, picamilon, and acadia rigidula) are illegal, but cannot pinpoint where this legal determination has been made. The reason for this is simple: there has been no determination regarding the illegality or safety of BMPEA, picamilon, and acadia rigidula. To the contrary, there was indirect approval of picamilon as an ingredient (as recently as April 15, 2016) as

exemplified by the Certificates of Free Sale[1] that were issued involving two of the products which are the subject of this action.

Additionally, Plaintiffs' Magnuson-Moss Warranty Act claim ("MMWA") is barred by the regulatory scheme of the FDCA because Plaintiffs' claim, although stated as an implied warranty, is actually based on an express warranty—i.e. the labeling of the Products. Therefore, pursuant to 15 U.S.C. § 2311(d), Plaintiffs' MMWA claim is barred because the MMWA is inapplicable to any written warranty, making or content of which is otherwise governed by Federal Law such as the FDCA.

Furthermore, with regard to Plaintiffs' allegations of parallel claims, Plaintiffs fail to engage in a meaningful analysis or demonstration of how parallel claims exist in this case. Instead Plaintiffs' offer the bare and unsupported conclusion that they have pleaded parallel claims which survive preemption. Making such a claim does not make it so. Absent a showing of how parallel claims have been pleaded, Plaintiffs' Opposition collapses like a house of cards.

## II. AFTER THREE TRIES, PLAINTIFFS' CLAIMS SHOULD BE DISMISSED

### A. Plaintiffs Lack Standing to Pursue Their Claims.

Plaintiffs' attempt to remedy their lack of standing by now claiming that they suffered injury-in-fact because they allege an economic injury. The crux of this argument is that Plaintiffs allegedly suffered an economic injury because they would not have purchased the Products, or they would have paid less for them, had they known that the Products were not Dietary Supplements and had they known that picamilon, BMPEA, or *acacia rigidula* were not dietary ingredients. Plaintiffs' argument fails.

---

[1] Knowing that the Certificates of Free Sale are contrary to Plaintiffs' allegations regarding illegality, Plaintiffs' attempt to exclude these damaging documents by requesting that the Court not consider them in their opposition to GNC's Request for Judicial Notice. However, for the reasons explained in GNC's Reply in support of its Request for Judicial Notice filed concurrently herewith, the Certificates of Free Sale are properly before the Court.

As set forth in *James v. Johnson & Johnson Consumer Cos., Inc.*, Civil No. 10-cv-03049, 2011 WL 198026 (D.N.J. Jan. 20, 2011) and *Medley v. Johnson & Johnson Consumer Cos., Inc.*, Civil No. 10-cv-02291, 2011 WL 159674 (D.N.J. Jan. 18, 2011), which this Court cited to and relied on in its Order dismissing Plaintiffs' First Amended Complaint, even accepting as true Plaintiffs' allegations that they would not have bought the Products had they known that the ingredients were not dietary ingredients, economic damages do not follow as a consequence. *James* and *Medley* both involved plaintiffs who alleged that Johnson & Johnson violated the FDA's ban on methyl chloride in cosmetic products because its baby shampoo contained the substance. The Court acknowledged that it was "undoubtedly correct" that had plaintiffs known the true nature the shampoo, they neither would have purchased it nor allowed their children to be exposed to it. *Id.* at *2. Nonetheless, the Court found that economic damages did not follow because once plaintiffs used the shampoo, there was no economic damages to complain of. The court explained that:

> Presumably, had Plaintiffs known about the alleged toxicity of the shampoo prior to using the product they would either have returned it unopened, or not purchased it in the first place. Once the product had been consumed, however, there was no economic injury for Plaintiffs to complain of, and the fear of future injury is legally insufficient to confer standing. Plaintiffs ***received the benefit of their bargain*** so long as there were no adverse health consequences, and the product worked as intended, meaning that the hair of Plaintiff's children was cleansed, and their eyes and skin were not irritated.

*Id. (Emphasis added.)*

Nowhere in *Medley* or *James* did the Courts find that the benefit-of-the-bargain involved purchasing a baby shampoo that did not contain toxins or did the Courts find that the plaintiffs would have paid less had they known the shampoo contained banned substance. Here, like in *Medley*, Plaintiffs received the benefit-of-the-bargain by using the Products, which presumably worked as intended since they purchased the Products on ***multiple occasions***, (See SAC ¶¶ 11-

22). In fact, nowhere in the entire 25 page SAC is there a single allegation that the Products did not work as intended. This is best illustrated by an example taken from the SAC itself. Plaintiffs' SAC contains a copy of the labeling for the product "Charge", an energy booster. Yet, nowhere in the SAC are there any allegations that the Plaintiffs who purchased and consumed Charge did not receive boosted energy. In other words, Plaintiffs received the benefit-of-the-bargain, just like the plaintiffs in *James* and *Medley*. (*See* SAC, generally.)

Plaintiffs' attempt to distinguish *James* claiming that *James* dealt with levels of toxicity and fear that the Plaintiffs may be injured in the future. Plaintiffs' attempt to contrast their claims by alleging that their supposed injury occurred at the point of sale.[2] Plaintiffs' argument is inapposite and fails to remedy the fact that Plaintiffs received the benefit-of-the-bargain. Like in *Medley,* Plaintiffs' claims are "circular and unpersuasive as to the contention that Plaintiffs suffered an injury-in-fact." Again, Plaintiffs' own pleadings show that the products worked for their intended purpose. As such, there is no economic injury.

Plaintiffs' SAC also fails to allege a concrete injury. *Bowman v. Ram Medical, Inc.*, Case No. 10-cv-4403(DMC)(MF), 2012 U.S. Dist. LEXIS 75218 (D.N.J. May 31, 2012) is analogous. In *Bowman, p*laintiffs were patients at a surgical center who were implanted with a counterfeit mesh during surgery instead of an FDA approved Bard-manufactured mesh. Plaintiffs discovered this only after receiving a letter stating as much from the medical center where the

---

[2] Plaintiffs cite to the Ninth Circuit case, *Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011), for why Plaintiffs' point of sale injury is successful. However, this case is not precedent, and the Third Circuit precedent clearly shows Plaintiffs do not have standing. Furthermore, *Maya* is distinguishable from the subject action. *Maya* involved a lawsuit filed by homeowners who alleged that they purchased their homes at an inflated price because of misrepresentations from developers that they were trying to build stable, family neighborhoods, when in reality, they were marketing the neighborhood to unqualified buyers who posed an abnormally high risk of foreclosure. The plaintiff homeowners alleged that they were injured at the time of purchase because they paid an inflated price due to the misrepresentations and the houses were not actually worth that price. As described in Defendant's Motion and Reply, Plaintiffs in this case have not properly alleged that the Products that they received were not worth the price they paid, as they have received the benefit-of-the-bargain for the Products and do not allege that the Products did not work as intended.

surgery was performed. *Id.* at *3. Like the subject action, the plaintiffs in *Bowman* did not claim personal injury, but instead claimed they believed at the time of implantation that the surgical mesh was Bard-manufactured, sterile, approved for use by the FDA, and indicated for surgical use. Plaintiffs claimed that had they known that the surgical mesh was not as represented, they would not have purchased the surgical mesh for use during the surgical procedures. *Id.* at *4-5. Plaintiffs argued that there was injury in fact based on the cost of buying a product that they would not have bought had facts that arose later been apparent at the time when they could have made a choice and that they received something other than what was bargained for. *Id.* at *9. In finding that plaintiffs had not alleged injury in fact, the Court noted that plaintiffs' case presented an abstract notion of injury rather than distinct and palpable harm. *Id.* at *10. The Court also noted that plaintiffs may not have even discovered that the counterfeit mesh was implanted without the letter from the surgical center. *Id.* As in *Bowman,* Plaintiffs here have only alleged an abstract notion of injury and would have no issue with the Products purchased had it not been for the eventual warning letters.

Plaintiffs also claim in their opposition that Plaintiffs have satisfied the Third Circuit's requirement in *Koronthaly v. L'Oreal USA, Inc.*, 374 F. App'x 257 (3d Cir. 2010) by alleging that they "received a product that . . . was worth objectively less than what one could reasonably expect" because the Products were allegedly adulterated, illicit merchandise and not dietary supplements. (Opp'n, page 8.) However, just claiming that the Products are worth objectively less does not make it so. Like in *Medley* where the Court found that even with the shampoo containing an illegal and allegedly toxic ingredient banned by the FDA in cosmetic products, plaintiffs received the benefit-of-the-bargain because the shampoo cleaned their children's hair without injury. Here, even assuming arguendo that the Products were "illicit merchandise,"

Plaintiffs do not allege that the Products did not work as intended. Going back to the "Charge" example, the Plaintiff who consumed this product does not allege that the Product did not provide the advertised energy boost.

Similarly, in *In re: Cheerios Mktg. & Sales Practices Litig.*, 2012 U.S. Dist. LEXIS 128325 (D.N.J. Sept. 10, 2012), the Court found that the plaintiffs did not properly allege that they received a product worth objectively less than what they could expect. In *Cheerios, p*laintiffs' claims that Cheerios mispresented the health benefits of its products. The *Cheerios* case, similar to the Subject Action, stemmed from a FDA warning letter that warned Cheerios that its advertising regarding the product lowering cholesterol violated the FDCA because it constituted a pharmaceutical formulation which would subject Cheerios to regulatory approval as a drug, and Cheerios had not obtained FDA approval for marketing the product as a drug. In *Cheerios,* the Court, citing to *Smajlaj v. Campbell Soup Co*., 782 F. Supp. 2d 84, 99 (D.N.J. 2011), explained that to allege benefit-of-the-bargain, a Plaintiff must allege both "(1) a reasonable belief about the product induced by a misrepresentation; and (2) that the difference in value between the product promised and the one received can be reasonably quantified." *Cheerios,* 2012 U.S. Dist. LEXIS 128325 at *35. In finding that the plaintiffs in *Cheerios* did not meet this standard, the Court noted that "none of the plaintiffs estimated any loss amount, or a difference in price between a comparative produce and Cheerios." Similar to *Cheerios,* Plaintiffs here have not alleged a reasonably quantifiable difference in value between the product promised and the one received. There is no loss amount alleged and no comparative product identified.

Additionally, Plaintiffs fail to plead sufficient facts to support an alternative product theory of economic harm, similar to *Estrada v. Johnson & Johnson*, Civil Action No. 16-7492,

2017 WL 2999026 at *14 (D.N.J. July 14, 2017). In fact, Plaintiffs fail to plead *any alternative products*. In Footnote 6 of their opposition, Plaintiffs claim that "Defendant sold numerous other 'dietary supplements' marketed for similar purposes that were lawful dietary supplements containing legitimate dietary ingredients", citing to Paragraphs 25, 41, and 42 of the SAC. However, these paragraphs simply allege the corporate structure of GNC and that it is a retailer of nutritional supplements. (*See* SAC ¶¶25, 41-42.) These allegations do not point to any specific alternative products that Plaintiffs could have bought. For example, Plaintiffs do not allege that there was a dietary supplement that provided the same energy boosting effects of "Charge." Thus, Plaintiffs cannot succeed on showing economic injury based on an alternative product theory.

Plaintiffs also fail to allege an economic injury under a premium price theory. *Estrada*, 2017 WL 2999026, at *6. Plaintiffs' SAC does not allege that the Products claimed to be superior to other products and/or that they purchased the Products at a premium. (See SAC, generally.) Moreover, in their Opposition, Plaintiffs do not argue that they even allege such a theory. (See Opposition, generally.) Thus, Plaintiffs fail to establish economic injury under a premium price theory.

Finally, Plaintiffs' claims fail to sufficiently plead an injury-in-fact because they fail to allege they purchased the Products *after* GNC had notice of any issue with the alleged ingredients. Or, put differently, at the time Plaintiffs are alleged to have purchased Products containing the complained of ingredients, GNC had no notice that the ingredients were not lawfully offered for sale. And in fact, Plaintiffs' SAC contains no allegations that there has been any determination by the FDA that the Products at issue in this case are not Dietary Supplements. Thus, Plaintiffs lack standing for this additional reason. Absent standing, Plaintiffs cannot move forward with their case and it can be dismissed in its entirety and with prejudice on this basis alone.

On a related note, Plaintiffs also lack standing based on their restitution and/or unjust enrichment claims. Plaintiffs allege that such claims are based on Defendant's wrongful profits (Opposition, Page 8 and Fn. 3.) Plaintiffs admit, however, that to recover Defendants' wrongful profits, Plaintiffs must have a personal stake in those profits (Opposition, Fn. 3.). However, as is shown above, Plaintiffs do not.

**B.    Plaintiffs' Magnuson-Moss Warranty Act claim is based on allegations of an alleged written warranty, and thus this claim fails because it is subject to the Regulatory Scheme of the FDCA.**

Plaintiffs argue in their Opposition, that their Magnuson-Moss Warranty Act claim ("MMWA") is not barred by the regulatory scheme of the FDCA because Plaintiffs only claim implied warranty and not express warranty. However, this argument is disingenuous because the entire claim is based on the alleged "warranties" that the Products were to supplement the diet with dietary ingredients, which are clearly based on the labeling of the Products. (SAC ¶ 102.) Such allegations rely solely on the referenced labeling on the Products set forth in the SAC.

**C.    The applicability of a federal-preemption defense is established from allegations in the Complaint itself.**

Plaintiffs argue in their opposition that preemption is not manifest in the complaint itself, and therefore, the issue cannot be decided on a 12(b)(6) motion to dismiss. Plaintiffs cite to *Jones v. Bock*, 549 U.S. 199, 215 (2007) for the proposition that "Whether a particular ground for opposing a claim may be the basis for dismissal for failure to state a claim depends on whether the allegations in the complaint suffice to establish that ground, not on the nature of the ground in the abstract." Plaintiffs further allege in the Opposition that to have a preemption defense decided on a 12(b)(6) motion, Plaintiffs must assert in a pleading facts that in and of themselves suffice to establish Defendant's preemption defense. (Opposition, page 13.) That requirement has been met here as it is clear from the citations to the FDCA throughout Plaintiffs'

complaint that Plaintiffs' claims are preempted.

**D.    Plaintiffs' Fail to Plead Parallel Claims and their Claims are Therefore Preempted.**

Plaintiffs assert that their claims escape preemption because their suit is based on parallel claims.  As is set forth below, Plaintiffs' offer this Court nothing in terms of any analysis demonstrating how this is in fact the case.

There is a recognized *narrow* exception to express preemption for claims that "'parallel,' rather than add to, federal requirements." *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 330 (2008) (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 495 (1996)).  Establishing liability via a parallel claim is "more difficult than it would be in a typical product liability case." *White v. Stryker*, 818 F. Supp. 2d 1032, 1037 (W.D. KY. 2011).  There is a "narrow gap through which a plaintiff's state-law claim must fit if it is to escape express or implied preemption." *Riley v. Cordis Corp.*, 625 F. Supp. 2d 769, 777 (D. Minn. 2009); *See also In re Medtronic, Inc., Sprint Fidelis Leads Prods. Liab. Litig.,* 623 F.3d 1200, 1204 (8th Cir.2010); *McLaughlin v. Bayer Corp.,* No. CV 14-7315, 2016 WL 1161578, at *5 (E.D. Pa. Mar. 22, 2016).  "For a state-law claim to survive, then, the claim must be premised on conduct that both (1) violates the FDCA and (2) would give rise to a recovery under state law even in the absence of the FDCA. *Riley v. Cordis Corp.*, 625 F. Supp. 2d at 777 (D. Minn. 2009).  Put slightly differently, to state a "parallel" claim, a plaintiff must allege (1) the violation of a specific federal requirement applicable to the product; (2) the violation of an *identical* state-law duty; and (3) that the predicate federal violation caused his or her injuries. *See, e.g., Wolicki-Gables v. Arrow Int'l, Inc.*, 634 F.3d 1296, 1300-01 (11th Cir. 2011); *McMullen v. Medtronic, Inc.*, 421 F.3d 482, 488-89 (7th Cir. 2005); *Caplinger v. Medtronic, Inc.*, 921 F. Supp. 2d 1206, 1214 (W.D. Okla. 2013); *White v. Stryker*, 818 F. Supp. at 1039-40.  Moreover, a plaintiff must plead more than non-

specific regulations as a basis for a parallel claim; "a greater level of specificity in pleading a parallel claim" is required. *See Gross v. Stryker Corp.*, 858 F. Supp. 2d 466, 495-96 (W.D. Pa. 2012).

Cases like *In re Medtronic, Inc., Sprint Fidelis Leads Product Liability Litigation (Medtronic Leads I),* 592 F. Supp. 2d 1147, 1158 (D. Minn. 2009), *aff'd, Medtronic Leads II*, 623 F.3d 1200 and *Wolicki-Gables* recognize that courts cannot simply accept supposedly parallel claims without closely examining whether the plaintiff's state law cause of action actually imposes duties that are genuinely equivalent to the duties imposed by federal law. Plaintiffs here fail to satisfy this demanding standard.

Plaintiffs' opposition recites page after page of case law on parallel claims but never even attempts to demonstrate how the sixteen (16) individual state laws, from ten (10) different states are genuinely equivalent to the duties imposed by federal law.[3] Similarly Plaintiffs' opposition is devoid of any effort to demonstrate that the language of all of those state statutes is identical to Federal law. Instead, Plaintiffs simply assert that they are alleging parallel claims. Saying something is true does not make it so. Plaintiffs have utterly failed to demonstrate how the state laws they are suing on are identical to Federal law. As such, Plaintiffs have failed to plead parallel claims and GNC's motion to dismiss on the basis of express preemption must be granted.

What is clear from Plaintiffs' own pleading is that Plaintiffs' claims are expressly preempted. The FDCA's primary focus is ensuring that drugs are "safe, effective and not misbranded," which the FDA ensures by enforcing the regulations. *Sandoz Pharm. Corp. v. Richardson–Vicks, Inc.*, 902 F.2d 222, 230 (2d Cir.1990). The FDCA's text and the FDCA's legislative history make clear that Congress intended the government, not private parties, to have exclusive responsibility for enforcing

---

[3] The SAC pleaded violations of the state laws of ten different states: Arkansas, California, Florida, Iowa, Michigan, Minnesota, New York, New Hampshire, Pennsylvania, and Texas.

the provisions of the FDCA. *See Caudill Seed & Warehouse Co., Inc. v. Jarrow Formulas, Inc.*, No. 3:13-CV-00082-CRS, 2015 WL 10943828, at *16 (W.D. Ky. Oct. 29, 2015)(Finding California's unfair competition claim had been preempted and noting that "the claim in substance is about an FDCA violation, which has been preempted by Congress' occupation of the field.")

**E.    Plaintiffs' Claims are Impliedly Preempted and They May Not Enforce the FDCA.**

Plaintiffs' SAC fails for the additional reason that it is impliedly preempted.  In a futile attempt to defeat implied preemption, Plaintiffs try to impose the narrowest reading of *Buckman* possible on this court, arguing that it does not apply on the grounds that there is no "fraud" on the FDA alleged here. *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001) (Opposition, Page 18.).  Such a limited reading unnecessarily limits *Buckman* and ignores its progeny.

*Buckman*'s relevance for this case is in its recognition that Congress prohibited private parties from enforcing the FDCA. *See Buckman*, 531 U.S. at 349, n.4 (noting "FDCA leaves no doubt it is Federal Government rather than private litigants who are authorized to file suit for noncompliance [of its] provisions: '[A]ll such proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States.'  21 U.S.C. § 337(a).").  It is the basis of the claim asserted that is relevant, not the state-law label Plaintiffs attach to it.  In *Buckman*, plaintiffs alleged a state-law fraud claim.  The Supreme Court recognized the claim as a "fraud-on-the-agency" claim that existed "solely by virtue of federal law." *Buckman*, 531 U.S. at 353.  The same holds true here.

Plaintiffs label their claims as various state law claims, but the SAC reveals that the basis of each of these claims is solely federal law – i.e. all of Plaintiffs' claims stem from the allegations regarding the nutrition label requirements and regulations of the FDCA.  (*See* SAC §

36.)  Just as the plaintiffs in *Buckman* could not state their claim without reference to the FDCA, Plaintiffs here cannot do so either.  In fact, the situations are one-and-the-same and both fall within the purview of FDA's enforcement authority and the prohibition against private rights of action in 21 U.S.C. § 337(a).

> **F.      Final Agency Action is Needed, Otherwise, GNC's Due Process Rights Are Violated.**

Plaintiffs claim that Defendant mischaracterizes Plaintiffs' suit because a final agency action does not need to be made because Plaintiffs' suit is based on whether statements are false and misleading.  (Opposition, page 20.)  However, this argument is disingenuous because the only way that the labeling of the products are false and/or misleading based on Plaintiffs' allegations in the SAC are if the FDA makes a determination that the ingredients are not dietary ingredients.

Additionally, citing *Altria Grp., Inc. v. Good*, 555 U.S. 70 (2008), Plaintiffs argue that agency nonenforcement is not the same as "a policy of approval."  (Opp. at 18.)  The problem here is that Plaintiffs fail to give credit to the fact there is more than just "agency non enforcement" here.  Just months before Dr. Welch's declaration was procured, the FDA signed a Certificate of Free Sale for two of the products at issue indicating that those products were freely marketed in the United States.  Unlike the Welch declaration, which was merely an opinion of someone employed by the FDA and not agency action, the Certificates of Free Sale bear the office seal of and are formal pronouncement of the U.S. the Department of Health and Human Services.  As to Plaintiffs' argument that parallel claims do not depend on FDCA violations, as set forth above Plaintiffs have failed to demonstrate the existence of viable parallel claims in this case.

Moreover, as is set forth in GNC's moving papers, allowing warning letters sent to others

to serve as final agency action would deprive GNC of its due process rights. Plaintiffs' rejoinder to this is that final agency action is not required for this Court to adjudicate parallel claims. This argument fails because, as demonstrated above, Plaintiffs have failed to articulate viable parallel claims. Because of this, Plaintiffs' entire argument in this regard crumbles.

## III.    CONCLUSION

For the reasons set forth above and in GNC's moving papers, GNC respectfully requests that this Court grant its Motion to Dismiss Plaintiffs' SAC in its entirety and with prejudice. Plaintiffs have had numerous opportunities to cure the defects in their complaint, including alleging theories and allegations that are completely different than those alleged in the original complaint. Nonetheless, they have still not been able to allege sufficient facts to support a claim against GNC. Therefore, Defendant respectfully requests that the Court dismiss the SAC with prejudice.

Dated: December 1, 2017          */s/ Amy B. Alderfer*

Paul K. Leary, Jr.
I.D. No. 85402 (*Admitted Pro Hac Vice*)
Mark E. Utke
I.D. No. 70750
Cozen O'Connor
1650 Market Street Suite 2800
Philadelphia, PA  19103
(215) 665-6911
Email: Pleary@cozen.com

Amy B. Alderfer
Cal. I.D. No. 205482 (*Admitted Pro Hac Vice*)
Brett Taylor
Cal. I.D. No. 274400 (*Admitted Pro Hac Vice*)
Cozen O'Connor
601 S. Figueroa Street
Suite 3700
Los Angeles, CA 90017

***Attorneys for Defendant***
***General Nutrition Corporation***